# Morris *v.* The State.

*Murder.*

(Decided April 28, 1906.   41 So. Rep. 274.)

1. *Jury; Venire; Statute; Construction.*—The requirements of §
   5004, Code 1896 are mandatory, and the record must affirma-
   tively show a compliance with its terms.

2. *Criminal Law; Record; Sufficiency; Jury in Capital Case.*—Where
   the record shows that the court ordered fifty names drawn
   from the jury box for the trial of a capital case, but fails to
   show that fifty were drawn, and recites that the following
   names were drawn from the jury box, by the presiding judge,
   in open court, in the presence of the defendant.   Held, such
   record fails affirmatively to show that fifty names were drawn
   and is not in compliance with the requirements of § 5004, Code
   1896.

3. *Same; Parties to Offenses; Principals; Statutes.*—Under § 4308,
   Code 1896, all persons concerned in the commission of a fel-
   ony, whether they directly commit the act or aid and abet in
   the act are punishable as principals; and each of two or more
   persons who by preconcert or arrangement, or on the spur of
   the moment, enter on a common enterprise contemplating the
   commission of a felony, is a conspirator, and if the common
   purpose is carried out, each is guilty of the felony; and one
   present, aiding or ready to aid the active perpetrator in the
   commission of the felony, is a guity participant and punish-
   able as the one who does the act.

4. *Same; Evidence; Declarations of Conspirator.*—Before the dec-
   larations of a co-conspirator are admissible against another,
   sufficient proof must be made to establish, in the opinion of
   the court, prima facie that a conspiracy exists.

5. *Same.*—Where a defendant is on trial for murder as the active
   principal evidence of his declarations tending to show a con-
   spiracy is admissible though there is no other proof of a con-
   spiracy; the declarations being admitted as those of the ac-
   cused; and not as those of a conspirator.

6. *Homicide; Evidence; Admissibility.*—Defendant being on trial
   for a homicide committed by his son, it is permissible to al-
   low evidence of declarations made by defendant a few minutes
   after the killing, "that we have come here to kill decedent, and
   we are going to do it," as showing a common purpose to take
   the life of decedent.

(Morris v. The State.)

7. *Same.*—Evidence that accused responded to the declarations of a third person that decedent had been killed, "I hope we have done him up, and if we haven't, I will go back and finish him," was admissible against accused in a prosecution for murder committed by accused son, as showing the feeling of accused towards decedent. So, also was evidence that about ten minutes after the killing accused declared he would kill everyone of the name, admissible to show malice, even though such declaration did not particularize decedent.

8. *Criminal Law; Evidence; Declarations; Admissibility.*—Where the facts show that the declarations of accused were voluntarily made, they were admissible without necessity for predicate being laid.

9. *Homicide; Evidence; Admissibility.*—Where the theory of the prosecution was that the killing was done as a result of a conspiracy between accused and his son, evidence that just prior to the difficulty some one said there is going to be a fight, was inadmissible in the absence of a showing that one of the alleged conspiritors made such statement.

10. *Same.*—When the question as to who provoked the difficulty is in dispute evidence that shortly before the killing accused was dancing and said "Where is decedent. Come and dance some while you are mad," is admissible as showing the status of mind of accused towards decedent.

11. *Same; Evidence; Res Gestae.*—Evidence of what was done and said by accused with reference to deceased on day of difficulty and leading up to the difficulty, was admissible as *res gestae.*

12. *Same.*—When taken with declaration of accused, made after the difficulty, "we have come to kill decedent and we are going to do it," evidence that accused about an hour before the difficulty, cursed and called decedent's name, was competent.

13. *Criminal Law; Evidence of Absent Witness on Preliminary Trial; Admissibility.*—When it is shown that a witness, who testified on the preliminary hearing, was a resident of another state and was not present, his testimony taken down at the preliminary trial, was admissible.

14. *Same; Conspiracy; Proof; Sufficiency.*—To establish conspiracy to do an unlawful act, it is not indispensable that the testimony should show the existence of a conspiracy any definite time prior to the doing of the act; it may have arisen on the spur of the moment.

15. *Same; Nature of Proof.*—Positive evidence is not necessary to prove a conspiracy; its existence may be inferred from circumstances attending the doing of an unlawful act, and from the conduct of the parties subsequent thereto.

(Morris v. The State.)

16. *Same; Decision of Court on Proceedings for Bail; Effect.*—Where the judge, on habeas corpus, allowed accused bail, which judgment was affirmed by the appellate court, this fact did not preclude the state from prosecuting the accused for murder in the first degree, and from introducing evidence other than that contained in the record of the proceedings on which the judgment was rendered. It did not render the matter of bail *res adjudicata* as to the grade of homicide.

17. *Same; Parties to Offense; Aiders and Abetters; Manslaughter.*—Under our law there may be aiders and abettors to the crime of manslaughter, as well as to the higher grades.—§ 5306.

18. *Same; Evidence; Res Gestae.*—What occurred from time defendant and deceased walked to the place at which the difficulty which resulted in the killing arose, up to the conclusion of the difficulty, is part of the transaction and admissible as *res gestae.*

19. *Same; Trial; Instructions; Requests; Necessity.*—That the court failed to limit evidence to the purpose of affecting the credibility of witnesses, for which it was competent, is a matter of which defendant cannot complain in the absence of a motion or requested instruction to that effect.

20. *Witnesses; Impeachment; Proof of Animus.*—In a prosecution for homicide committed by the son of the accused, it was competent to ask the son, as a witness, about a conversation in which he made threats against deceased, for the purpose of showing his animus, and as affecting his credibility.

21. *Same.*—Upon denial by the son of accused that he had made threats against the deceased, it was competent to introduce testimony showing that he had done so.

22. *Same.*—Where accused testified that deceased knocked him down, jumped on him, caught him by the throat with his left hand and began to beat him in the face with his right hand, it was proper to permit him to be asked, on cross, if he did not say after the difficulty that he was not hurt.

23. *Criminal Law; Trial; Instructions; Evidence.*—In a trial for murder where there was evidence tending to support self defense a charge asserting that there was no self defense in the case was erroneous, as a charge on the effect of the evidence, and as taking a material inquiry from the jury.

24. *Same; Instructions; Aiding and Abetting; Homicide.*—An instruction asserting that accused cannot be guilty as an aider or abetter in the killing if he gave no "assistance or uttered no word to the person doing the killing," is misleading and properly refused for using the disjunctive "or" instead of "and" between "assistance" and "uttered."

⠐(Morris v. The State.)

25.  *Same; Instructions; Applicability to Evidence; Homicide.*—
Where there was evidence tending to show a conspiracy be-
tween the accused and his son to kill deceased, an instruction
ignoring the theory of conspiracy was properly refused.

26.  *Homicide; Self Defense; Instructions.*—An instruction asserting
that the burden of proof is not on the accused to establish self
defense, by a preponderance of the evidence, but, if the evidence
raises a reasonable doubt as to whether accused acted in self
defense, he must be acquitted, is faulty in that it does not
define what constitutes self defense and is misleading as to
burden of proof.

27.  *Homicide; Instructions; Aiding and Abetting.*—Where there was
evidence tending to show that at the time of the killing by
his son accused stood in front of deceased with his hand near
his pocket as if attempting to draw a weapon, an instruction
that accused could not be found guilty as an aider or abettor
if he gave no assistance or uttered no word to the person doing
the killing, and if accused was not present by preconcert, or
present with the knowledge of the person doing the killing,
with intent to aid him, unless he actually took part in the
killing, was erroneous as pretermitting inquiry as to aiding
and abetting by conduct, demonstration or menace.

28.  _*Same; Malice; Instructions.*—Manslaughter being within the
charge for which accused was being tried, an instruction
that unless the accused indulged in the malice of his son to-
wards deceased he must be acquitted, was misleading.

29.  *Same.*—On trial of homicide committed by the son of accused
an instruction that unless the killing was done under such
circumstances as to render the son guilty of murder, the
accused could not be found guilty of murder, was erroneous ⠐
in that it was misleading. The accused might have been
found guilty of manslaughter as aider and abetter.

30.  _*Same.*—An instruction asserting that no presumption was to
be indulged in against accused because he was present at the
place of the killing and had an altercation with deceased just
prior thereto, was properly refused as an invasion of the prov-
ince of the jury.

31.  *Same; Appeal; Harmless Error; Cured by Verdict.*—Where
accused being tried for murder is found guilty of manslaught-
er errors arising from incorrect definition of malice are cured
by the verdict.

32.  *Same.*—Where accused, being tried for murder, was con-
victed of manslaughter errors arising in instructions relating
to murder are cured and will not be considered on appeal.

(Morris v. The State.)

33. *Homicide; Self Defense; Instructions.*—A charge asserting that the son has a right to slay in defense of the father whenever the father has the right to slay in his own defense; failing to define what the elements of self-defense are, is erroneous and properly refused.

34. _*Same.*—A charge directing an acquittal of accused where there is a reasonable doubt as to whether or not the killing was in self-defense, is erroneous in failing to define self-defense.

35. *Same.*—A charge asserting that the danger which will excuse a killing need not be real, and if the jury believe that the appearance of danger surrounding accused at the time of the homicide was such as to induce a reasonable belief, honestly entertained by the son, that accused's life was in danger, and there was no other reasonable means open to accused to avoid the danger but by taking the life of deceased, accused must be acquitted, though deceased had no deadly weapon, unless accused could have retreated and avoided the danger, etc., was properly refused for that it failed to negative accused's willingness in entering into the difficulty.

36. *Same; Instructions; Aiding and Abetting.*—An instruction hypothesizing that the son must have had knowledge that the acts done or words said by accused were for the purpose of aiding or encouraging the son to kill deceased, goes too far, for, if under the circumstances, the son was led to believe that the acts done or words said were meant to encourage him, that is sufficient to render accused guilty.

37. *Homicide; Proof of Motive; Necessity.*—It is not necessary that the state should prove a motive for the homicide.

38. *Same; Instructions; Province of Jury.*—Where on the trial of accused for a killing done by his son there was evidence tending to show that a conspiracy existed between them, it was invasive of the province of the jury to give an instruction asserting that there was no evidence showing such a conspiracy.

39. *Criminal Law; Instructions; Applicability to Evidence.*—Where the evidence tended to show that accused and son had formed a conspiracy to kill deceased, and that the acused stated "We have come here to kill," etc., an instruction assuming that the evidence of conspiracy was circumstantial was properly refused.

40. *Same; Trial; Instructions; Refusal to Give.*—It is not error to refuse requested instructions substantially covered by written instructions already given.

41. *Same; Ignoring Evidence.*—It is proper to refuse requested instructions that ignore parts of the evidence.

(Morris v. The State.)

42. *Same; Assumption of Facts.*—Instructions which assume as a fact things material on which there is a conflict in the evidence are properly refused.

43. *Same; Reasonable Doubt.*—A charge asserting that where the evidence convinces the jury that there is a probability of defendant's innocence he should be acquitted, is a correct statement of the law.

44. *Same; Instructions; Refusal to Give Instructions Cured by Those Given.*—Where the trial court, in its charge, rested the conviction alone on the hypothesis that the jury should find that a conspiracy actually existing between accused and his son to kill deceased, it was not error to refuse a requested instruction that accused could not be found guilty unless the jury found that there was a conspiracy to kill, etc.

45. *Same; Argumentative Charge.*—A charge asserting that the fact that the grand jury indicted accused for killing deceased with malice aforethought could not be considered by the jury as tending to show either guilty or innocence, is argumentative and properly refused.

46. *Same; Instructions; Ignoring Evidence.*—A charge asserting that the son has a right to slay in defense of his father who is in real or apparent imminent danger and is not at fault in bringing on the difficulty, and there is no other means of escaping from the real or apparent imminent danger, is properly refused as ignoring the tendencies of the evidence showing accused entered into the difficulty willingly.

47. *Same; Instructions; Self Defense.*—A charge asserting only that the burden is on the state to show that accused was not free from fault in bringing on the difficulty with deceased, is misleading in that it might lead the jury to the conclusion that retreat and belief in imminence of danger were not to be considered as factors in the case.

48. *Criminal Law; Instructions; Argument.*—An instruction asserting that whatever occurrences might have sprung from the trouble between deceased and accused, if they were mere incidents happening casually without knowledge or expectation of accused, such casual incidents did not show a conspiracy between defendant and his son, was argumentative and properly refused.

49. *Same; Instructions; Self Defense.*—A charge asserting that if the acts of the deceased, at the time he was shot, were such as to reasonably impress on the son of accused the belief, and he honestly believed that he was in imminent danger to his life, and there was no other means of escape, except by taking the life of deceased, then the son had the right to shoot de-

ceased, unless the son brought on the difficulty, was properly refused as ignoring the evidence of the existence of a conspiracy between the father and son to kill deceased; and also, because ignoring the son's right of self-defense as dependent on the status the defendant occupied with reference to the difficulty with decedent.

50.  *Same; Aiding Perpetrator of Crime; Instructions.*—In view of the tendencies of the evidence showing a conspiracy, a charge was properly refused as invasive of the province of the jury, that asserted that there was no evidence that accused did any act or said any word at the time of the killing of deceased by son of accused, that aided in the killing.

51.  *Same; Trial; Withdrawing Instructions.*—It is proper for the court to recall the jury, and, in the presence of accused and counsel, correct erroneous instructions given them before they retired.

APPEAL from Limestone Circuit Court.

Heard before HON. D. W. SPEAKE.

The defendant was indicted for killing Doc Grisham by shooting him with a pistol. The evidence on the trial shows that the killing was done by a son of this defendant after the deceased had struck this defendant. The other facts necessary to properly understand the opinion are fully set out therein.

The following charges were requested by the defendant and refused by the court:

Charge 7: "The burden of proof is on the defendant to establish self-defense by a preponderance of the evidence; but, if all the evidence raises in the minds of the jury a reasonable doubt as to whether or not the defendant acted in self-defense, you must find him not guilty."

Charge 12 is fully set out in the opinion.

Charge 18: "I charge you, gentlemen of the jury, that before you can convict this defendant of having aided and abetted or aided or abetted his son, John Morris, Jr., in the killing of B. F. Grisham, you must believe from the evidence beyond a reasonable doubt that this defendant participated in the killing, or intentionally encouraged his son in said killing, or was present for the purpose of aiding his son in the killing, which purpose

was known to said son, John Morris, Jr., at the time the latter fired the fatal shot."

Charge 20: "I charge you, gentlemen of the jury, the question as to whether or not there is a conspiracy and whether or not the defendant was a participant therein, rests on circumstantial evidence and a conclusion as to whether or not there was a conspiracy and the participation therein by this defendant. The failure of the state to prove a motive or inducement therefor, if you believe it has so failed, is a circumstance that may be considered by you in connection with all the other evidence in the case."

Charge 21: "I charge you, gentlemen of the jury, that there is no evidence in this case showing a conspiracy or prearrangement on the part of this defendant and Johnnie Morris, Jr., to take the life of B. F. Grisham."

Charge 26: "I charge you, gentlemen of the jury, that if you believe from the evidence that the defendant was knocked down by B. F. Grisham, and that Johnnie Morris, Jr., ran up and shot the deceased, without knowledge of this defendant, you cannot convict the defendant, unless you further believe beyond a reasonable doubt that there was a conspiracy or prearrangement between the defendant and his son to take the life of B. F. Grisham."

Charge 29: "I charge you, gentlemen of the jury, that if you believe from the evidence that B. F. Grisham started the difficulty with this defendant by calling him off and knocking him down, and that John Morris, Jr., ran up and fired the fatal shot, without encouragement from this defendant, your verdict should be not guilty, unless you believe beyond all reasonable doubt and to a moral certainty that there was a prearrangement or a conspiracy existing between this defendant and his son, John Morris, Jr., to take the life of B. F. Grisham."

Charge 31: "If you believe from the evidence that B. F. Grisham provoked the difficulty by calling this defendant off and knocking him down, and if you believe from the evidence that John Morris, Jr., ran up and fired the fatal shot without encouragement from this defendant and without his aid and assistance, your verdict should be not guilty."

(Morris v. The State.)

Charge 41: "Malice upon the part of John Morris, Jr., and not indulged in by the defendant, will not authorize a conviction of the defendant of the offense charged in the indictment, unless the defendant, with knowledge of the malice, aided, abetted, or encouraged the killing."

Charge 42: "Unless the killing of deceased was done under such circumstances as to render John Morris, Jr., guilty of the murder, the jury cannot find the defendant guilty as charged in the indictment."

Charge 46: "No presumption is to be indulged against this defendant because he was present at the place of killing and had an altercation with the deceased just prior to the killing."

Charge 50: "Malice upon the part of John Morris, Jr., not indulged in by the defendant, will not authorize a conviction of the defendant, unless he had personal knowledge of the malice on the part of John Morris, Jr."

Charge 53: "If the evidence in this case convinces the jury that there is a probability of the defendant's innocence, then your verdict should be not guilty."

Charge 2A: "I charge you, gentlemen of the jury, that before you can find this defendant guilty you must find beyond all reasonable doubt and to a moral certainty, from all the evidence, that there was a conspiracy into which the defendant entered to kill B. F. Grisham or to commit some other unlawful act, and the killing of B. F. Grisham followed from or was the natural or proximate result of such conspiracy to commit such unlawful acts, or that he aided or abetted in the killing by preconcert of action with John Morris, Jr., or that he was present and aided John Morris, Jr., in the infliction of the fatal shot, or was present for the purpose to aid, encourage, or incite John Morris, Jr., to commit the deed, which purpose was known to John Morris, Jr., and did contribute to it."

Charge AA: "I charge you, gentlemen of the jury, that a son has the right to slay in defense of his father whenever that father has a right to slay in his own defense."

(Morris v. The State.)

Charge 1B : "I charge you, gentlemen of the jury, that, if you have a reasonable doubt as to whether or not the killing was in self-defense, you should acquit the defendant in this case."

Charge 3B :  "I charge you, gentlemen of the jury, that the fact that the grand jury of this county indicted this defendant for the unlawful killing of B. F. Grisham with malice aforethought cannot be considered by you as tending to show either his guilt of innocence." ·

Charges CC, DD, and E related to murder in the first and second degrees, and the verdict was for manslaughter.

Charge EE :  "I charge you, gentlemen of the jury, that a son has the right to shoot in defense of his father; provided his father is in real or apparent imminent danger of death or grievous bodily harm, and was not at fault in bringing on the difficulty, and there was no other means of escape from the real or apparent danger that menaced him, when there was no other means of escape save by taking the life of his father's assailant."

Charge G. :  "I charge you, gentlemen of the jury, before you can convict this defendant under this indictment, you must believe from the evidence beyond all reasonable doubt and to a moral certainty that this defendant was not free from fault in bringing on the difficulty with B. F. Grisham and that he actually participated in the killing of B. F. Grisham, or that he and John Morris, Jr., had a preconcert or agreement to do some act from which the death of B. F. Grisham would proximately result from the doing of such act, or that there was a community of purpose between John Morris, Jr., and this defendant to kill B. F. Grisham, or to do some act from which the death of B. F. Grisham would flow as a proximate result of doing such act, or that the defendant aided and abetted or aided or abetted John Morris, Jr., in killing B. F. Grisham."

Charge K :  "I charge you, gentlemen of the jury, that whatever occurrence may have sprung out of the trouble between B. F. Grisham and this defendant, if they were

(Morris v. The State.)

mere incidents happening casually, without the knowledge, design, or expectation of the defendant, then these casual incidents do not show a conspiracy."

Charge KK: "I charge you, gentlemen of the jury, that you cannot find this defendant guilty, on the theory of a conspiracy or prearrangement or preconcert, on the uncorroborated declarations or admissions or confessions of this defendant."

Charge NN: "I charge you, gentlemen of the jury, that you cannot find this defendant guilty, on the theory of a conspiracy or prearrangement or preconcert, on the uncorroborated confessions of this defendant."

Charge OO: "I charge you gentlemen of the jury, that if you believe from the evidence in this case that the acts of B. F. Grisham, at the time he was shot, were such as to reasonably impress upon John Morris, Jr., the reasonable belief, and John Morris, Jr., honestly entertained that belief at the time, that he was in imminent danger to his life or great bodily harm, and there was no other means of escape, except by taking the life of B. F. Grisham, then John Morris, Jr., had the right to shoot B. F. Grisham, unless you further believe that John Morris, Jr., brought on the difficulty."

Charge X: "I charge you, gentlemen of the jury, that there is no evidence in this case that this defendant did any act or said any word at the time John Morris, Jr., killed Grisham that aided in the killing."

Charge Y: "Before you can convict the defendant, on the ground that he aided or encouraged John Morris, by his act or words at the time he shot Grisham, you must believe beyond a reasonable doubt and to a moral certainty that John Morris had knowledge of such acts or words, and also knowledge of the acts or words done or said for such purpose."

Charge XYZ: "I charge you, gentlemen of the jury, that the dangers that will excuse one for killing another need not be real or actual. It may now be known that all the appearances of danger were false, and that B. F. Grisham never intended to do the defendant any further harm, and that he did not have a pistol or other deadly weapon; yet if the jury believe from all the evidence in

(Morris v. The State.)

this case, or any part of the same, after a consideration of all the evidence in the case, that the appearance of danger surrounding this defendant at the time was such as to induce a reasonable belief, honestly entertained by John Morris, Jr., that his father's life was in danger, or that his father was about to suffer great bodily harm, and that there was no other reasonable means at the time open to defendant, or to his son, Johnnie Morris, Jr., to avoid the danger, real or apparent, to the defendant, but by taking the life of B. F. Grisham, the defendant being without fault in producing or causing the situation culminating in such appearances, the law holds Johnnie Morris, Jr., harmless for the killing of B. F. Grisham, and the jury must acquit the defendant, although B. F. Grisham had no pistol or other deadly weapon, unless the jury further believe from the evidence that defendant, if you find that apparent danger menaced him, could have retreated and avoided his apparent danger, or that there was a preconcert or conspiracy on the part of defendant and his son, John Morris, Jr., to engage in some unlawful act, from the doing of which the death of B. F. Grisham proximately resulted."

W. R. WALKER and CALLAHAN & HARRIS, for appellant.—Where the deceased was slain to prevent the homicide or grevious bodily injury of another, and both the slayer and the other party are in a condition to invoke the doctrine of self-defense, such killing is not murder or manslaughter, but is excusable homicide.—*Bostick's Case*, 94 Ala. 45; *Dill's Case*, 25 Ala. 15; *Nole's Case*, 26 Ala. 31; *Simpson's Case*, 59 Ala. 1; *Strong's Case*, 71 Ala. 329; *Gibson's Case*, 91 Ala. 64; *Parker's Case*, 88 Ala. 4; 2 Cooley's Blackstone, (4 Ed.), 1349; *Oliver's Case*, 17 Ala. 587; 1 Bish. New Crim. Law, 877; *Patten's Case*, 100 Am. Dec. 173; *Dupree's Case*, 33 Ala. 380; *Stanley's Case*, 9 Am. St. Rep. 305; *In re Neagle*, 135 U. S. I. 34 L. Ed. 55; *Deloney's Case*, 29 S. W. Rep. 616; *Stanton's Case*, 29 S. W. Rep. 476; 25 Am. & Eng. Encycl. Law, (2 Ed.), 274; 21 Am. & Eng. Encycl. Law,

(Morris v. The State.)

(2 Ed.), 207; *Ross' Case*, 38 Am. Rep. 643; *Wood's Case*, 128 Ala. 27; *Mitchell's Case*, 129 Ala. 23; *Whatley's Case*, 91 Ala. 108.

Under the excuses of self-defense the principal civil and natural relations are comprehended; therefore, killings by parent or child in the necessary defense of each other are excused.—2 Cooley's Blackstone, (4 Ed.), 1354; 25 Am. & Eng. Encycl. Law, (2 Ed.), 275; *Karr's Case*, 106 Ala. 1; *Cook's Case*, 33 Am. St. Rep. 723; *Mitchell's Case*, 129 Ala. 23; *Sullivan's Case*, 18 S. W. Rep. 530; *Paten's Case*, 100 Am. Dec. 173; *Washington's Case*, 21 Sou. Rep. 656; *Mitchell's Case*, 30 Sou. Rep. 803; *Hickman's Case*, 6 Am. St. Rep. 553; *Grugin's Case*, 42 L. R. A. 774; *Campbell's Case*, 21 Am. St. Rep. 348; *Chittenden's Case*, 9 S. W. Rep. 386; *Whatley's Case*, 91 Ala. 108; *Wood's Case*, 128 Ala. 27.

"A necessity apparently real is real so far as the slayer is concerned.—I Bish. New Crim. Law, § 305, Note 3, § 874; *Stanley's Case*, 9 Am. St. Rep. 305; 2 Bish. New Crim. Law, § 645; *Oliver's Case*, 17 Ala. 587; *Carroll's Case*, 23 Ala. 28; *Roger's Case*, 62 Ala. 170; *DeArman's Case*, 71 Ala. 351; *Logue's Case*, 38 Pa. St. 265, 80 Am. Dec. 481; 25 Am. & Eng. Encycl. Law, (2 Ed.), 261; *Keith's Case*, 97 Ala. 32; *Thomas' Case*, 106 Ala. 19; *Abernathy's Case*, 129 Ala. 85; *Harris' Case*, 96 Ala. 84.

If one who is assaulted kills another, there being an overt act rendering the danger imminent or apparently imminent, being himself without fault in bringing on the difficulty, and the slayer reasonably apprehends death or great bodily harm to himself unless he kills his assailant, such killing is justifiable.—1 Bish. New Crim. Law, § 864; *Holmes' Case*, 23 Ala. 17; *Carroll's Case*, 23 Ala. 28; 25 Am. & Eng. Encycl. Law, (2 Ed.), 258, 264; *Allen's Case*, 150 U. S. 551, 37 L. Ed. 1179;; *Hickory's Case*, *Case*, 151 U S. 303, 38 L. Ed. 170; *Christensen's Case*, 96 Ala. 89; *Roden's Case*, 97 Ala. 54; *Hughey's Case*, 47 Ala. 103; *Myer's Case*, 62 Ala. 599; *Roger's Case*, 62 Ala. 170; *Robert's Case*, 68 Ala. 515; *Story's Case*, 71 Ala. 329; *DeArman's Case*, 71 Ala. 351; *Brown's Case*,

(Morris v. The State.)

74 Ala. 487; *Brinkley's Case,* 89 Ala. 34; *Karr's Case*
106 Ala. 4; *William's Case,* 113 Ala. 58; *Mitchell's Case,*
129 Ala. 23.

Manslaughter is the unlawful killing of a human being
without malice.—Code, § 4860; *Dennis Case,* 120 Ala.
64; *Hornsby's Case,* 94 Ala. 55; *Pierson's Case,* 99 Ala.
148, 153; *Compton's Case,* 110 Ala. 24; *Brown's Case,*
109 Ala. 70; *Campbell's Case,* 21 Am. St. Rep. 348, 352;
*Ex parte Warrick,* 73 Ala. 57; *Stewart's Case,* 78 Ala.
436; *Judge's Case,* 58 Ala. 406.

"Conspiracy is the corrupt agreeing together of two
or more persons to do, by concerted action, something
unlawful either as a means or an end."

"Or, as it is generally defined, conspiracy is confeder-
ating together of two or more persons to accomplish
some unlawful purpose, or a lawful purpose by some
unlawful means."—2 Bish. New Crim. Law, §§ 171, 175;
*Davis' Case,* 46 C. C. A. 619, 622; *Tally's Case,* 102 Ala.
25; *Raiford's Case,* 59 Ala. 106; *Pierson's Case,* 99 Ala.
152;; *Martin's Case,* 89 Ala. 117; *Martin's Case,* 136
32; *Henderson's Case,* 120 Ala. 360; *Williams' Case,* 81
Ala. 1; *Jordan's Case,* 79 Ala. 9; *Jordan's Case,* 81 Ala.
20; *Whittaker's Case,* 106 Ala. 30; *Connaughty's Case,* 1
Wisc. 159, 60 Am. Dec. 370; *Hildreth's Case,* 51 Am.
Dec. 364, and Note 374-375; *Hick's Case,* 150 U. S. 442,
37 L. Ed. 1137; *Woolweaver's Case,* 50 Ohio St. 277, 34
N. E. Rep. 352.

Before acts and declarations of others, in furtherance
of common design are admissible, there must be proof,
*prima facia,* establishing the existence of a conspiracy.—
*McAnally's Case,* 74 Ala. 9; *Hunter's Case,* 112 Ala. 77;
*Martin's Case,* 28 Ala. 37; *Frank's Case,* 27 Ala. 71;
*Johnson's Case,* 29 Ala. 62; *Stewart's Case,* 26 Ala. 44;
*Phoenix Ins. Co. v. Moog,* 78 Ala. 284; *Martin's Case*
136 Ala. 32; 1 Green. Ev. (15 Ed.), § 111; *Brown's
Case,* 150 U. S. 93, 37 L. Ed. 1010; 4 Elliott on Evidence,
§§ 29-40-2943.

"To constitute principals in the second degree there
must be, in the first place, a participation in the act
committed; and, in the second place, presence, either
actual or constructive, at the time of its commission."—

(Morris v. The State.)

1 Wharton, Am. Crim. Law, §§ 116-133; 1 Bish. New
Crim. Law, § 633; Stephen's Dig. Crim. Law, 26; 1 Rus-
sell on Crimes, (9 Ed.), *49-57; 1 Roscoe's Crim. Ev.
(8 Ed.), *181-182; *Tally's Case,* 102 Ala. 26; 12 Cyc.
185-190; *McLeroy's Case,* 120 Ala. 274; *Gibbon's Case,*
89 Ala. 121; *Jordan's Case,* 81 Ala. 20; *Frank's Case,* 27
Ala. 37; *Whittaker's Case,* 106 Ala. 30; *Singleton's
Case,* 106 Ala. 49; *Cabbell's Case,* 46 Ala. 195; *Tanner's
Case,* 92 Ala. 1; *Wick's Case,* 44 Ala. 389; *Connaughty's
Case,* 1 Wisc. 159, 60 Am. Dec. 370; *Hildreth's Case,* 9
N. C. 440, 51 Am. Dec. 349, and Note 374; *Woodward's
Case,* 45 Cal. 293, 13 Am. Rep. 176.

In criminal cases the introduction of no species of
evidence is so restrained and guarded as the admissions
or confessions of the accused, whether expressed in
words or to be implied from conduct.—Green. Ev.
(15 Ed.), § 200; *Burn's Case,* 49 Ala. 370, 376; *Earl v.
Pickens,* 5 C. and P. 542, 24 Eng. Com. Law, 448 and
Note; *Wilson's Case,* 73 Ala. 527, 532; *Simon's Case,* 6
C. and P. 510, 25 Eng. Com. Law, 532; I Roscoe's Crim.
Ev. (8 Ed.), *41; 1 Elliott on Evidence, § 242; *Allen
v. Young,* 6 T. B. Monroe, 136, 17 Am. Dec. 139; 2
Cooley's Blackstone, (4 Ed.), 1496; 1 Roscoe's Crim.
Ev. (8 Ed.), *92; 3 Russ. on Crimes, (9 Ed.), *279.

Only whatever tends to shed light on the main in-
quiry, and does not withdraw attention from the same
by obtruding upon the minds of the jury matters which
are foreign, or of questionable pertinency, is, as a gen-
eral rule, admissible in evidence.—*Mattison's Case,* 58
Ala. 224; 1 Bish. New Crim. Proc. § 1083, *et seq;* 1
Roscoe's Crim. Ev. (8 Ed.), *92; 3 Russ. on Crimes,
(9 Ed.), *279; *Campbell's Case,* 23 Ala. 44; *Hall's Case,*
40 Ala. 698; *McCormick's Case,* 102 Ala. 161; *Blount's
Case,* 49 Ala. 381; *Governor v. Campbell,* 17 Ala. 566;
*Manaway's Case,* 44 Ala. 375; *Rosenbaum's Case,* 33
Ala. 354; *Felder's Case,* 59 Am. Rep. 777; *Whittaker's
Case,* 106 Ala. 30; *R. R. v. Hawk,* 72 Ala. 112, 117, 118;
*Womack's Case,* 84 Ala. 150; *Carr's Case,* 106 Ala. 1;
*Curtis' Case,* 118 Ala. 125.

The act or declaration of the defendant is admissible
in evidence only when such act or declaration occurred

(Morris v. The State.)

within the period of time covered by the incriminating evidence, or when it tends in some way to explain some fact or circumstance introduced by the state, or to impair or to destroy the force of some evidence for the state—*Chaney's Case*, 31 Ala. 342; *Williams' Case*, 103 Ala. 96; *Stalling's Case*, 38 Sou. Rep. 261; 1 Elliott on Ev. § 536, 543; 1 Roscoe's Crim. Ev. *26, and Note; 3 Russ. on Crimes, (9 Ed.), *247; 1 Bish. New Crim. Proc. §§ 1085, 1086.

On application for bail by one charged with a capital offense, it is a safe rule to refuse bail when the judge would sustain a capital conviction, and admit to bail when the evidence is of less efficacy.—*Ex parte Sloan*, 95 Ala. 22; *Ex parte Nettles*, 58 Ala. 268; *Ex parte McInally*, 53 Ala. 495; *Ex parte Allen*, 55 Ala. 258; *Ex parte Brown*, 65 Ala. 446; *Ex parte Warrick*, 73 Ala. 57.

MASSEY WILSON, Attorney General. for the State.— The remark of a by-stander, just preceding the difficulty, "there is going to be a fight," was properly admitted as was expressly held on the appeal of John Morris, Jr.— *Morris v. State*, 39 So. 608, 15 h. n. 611. See, also. *Harbour v. State*, 140 Ala. 103, 109. All that happened from the beginning of the difficulty between the appellant and Grisham to the firing of the fatal shot was one transaction. The fact that the son interferred and made himself a party to the difficulty in behalf of the father would justify an inference of a conspiracy, and the father would be liable for the acts of the son.—*Wood v. State*, 128 Ala. 27; *Buford v. State*, 132 Ala. 6; *Elmore v. State*, 110 Ala. 63; *Martin v. State*, 99 Ala. 115; *Ferguson v. State*, 141 Ala. 20.

The shooting of Grisham by John Morris, Jr.; the interference in the difficulty by Walter Morris; the act of John in pulling out a second pistol, and the fact that John had two pistols, were all incidents of the *res gestae* and properly shown.—*Sanford v. State*, 39 So. 370.

6

(Morris v. The State.)

The statement of the defendant made after the shooting, "that he would kill every Grisham by the name," tended to show a bad state of feeling on the part of the defendant towards the deceased.—*Morris v. State*, 39 So. 608, 612.

It was also proper to show the question asked by the defendant during the dance regarding Doc Grisham.—*Morris v. State*, 39 So. 608, 612.

The threat of the defendant directed towards "every Grisham by the name," was properly shown for the reason before assigned to exception 8.

The testimony of Mrs. Grisham that she heard the defendant curse and call her husband's name was likewise properly admitted. In the absence of all that was said the testimony was of little weight, but the court could not exclude it entirely. Its weight was for the jury.

The predicate was fully laid. It appears affirmatively that the witness at the time of the trial resided in Tennessee.—*Wilson v. State*, 140 Ala. 43, 51.

The court was correct in charging the jury that the doctrine of self-defense had no field of operation in this case. The charge under consideration was proper and the special charges requested by the appellant on the doctrine of self-defense were all rightly refused for this if for no other reason.—*Hendricks v. State*, 122 Ala. 42, 46; *Scoggins v. State*, 120 Ala. 369; *Teague v. State*, 120 Ala. 309, 316; *Angling v. State*, 137 Ala. 17, 22; *Gilmore v. State*, 141 Ala. 51.

The jury was charged on the night of October 11th, and retired to consider their verdict. The following morning the trial judge went to the jury room and notified them "not to further consider or deliberate upon their verdict as the judge desired to give them additional instructions." This was early in the morning prior to the convening of the court. This action of the court is excepted to and it is vigorously contended by opposing counsel that there was error in the action of the judge. It is not contended that any instruction was

(Morris v. The State.)

given the jury or any statement made to them by the judge other than as quoted above, but the exception is predicated upon the mere fact that the judge opened the door to the jury room and made the above announcement to them.—*Johnson v. State,* 100 Ala. 55; *Collins v. State,* 33 Ala. 434.

It was not the province of the court nor the right of the court to charge the jury that there was no evidence of a conspiracy. It was entirely for the jury to say whether there was such evidence.—*Caddell v. State,* 129 Ala. 57, 64; *Thomas v. State,* 130 Ala. 62, 65; *Starks v. State,* 137 Ala. 9; *Ferguson v. State,* 141 Ala. 20.

Counsel labor at length in the effort to show that the charge of the court on the question of conspiracy is erroneous. In the case of *Amos v. State,* 88 Ala. 1, 4, Judge Stone lays down the law applicable to this case in the following language:

"Whether in fact the violence was done by one, or more than one; whether they went there with a common purpose to do violence, or to see it done, or to aid or encourage the doing of it, or to lend assistance should it become necessary; each and all of these were proper inquiries for the jury, and the testimony justified their submission to that body. So, if, being present without preconcert, they entered into a common illegal purpose, and one or more of them did the deed of violence, and the others were present, aiding, abetting, encouraging, sanctioning, or giving countenance to the unlawful act, or ready to lend assistance if it should become necessary; and the jury, by the proper measure of proof, find either one guilty, the others are also guilty. Hence it is that, when there is testimony, sufficient in the opinion of the presiding judge to show a *prima facie* case of conspiracy, or community of purpose, then the acts of each may be proved on the trial against all, or any number of the alleged conspirators; and if the jury find that there was such conspiracy, or common purpose, then the act of each participant, done or sanctioned by one in aid of the common purpose, becomes the act of all in its criminating effect."

(Allen v. The State.)

Charge No. 7 has frequently been condemned—*Mann v. State*, 134 Ala. 1, 23 (Charge 4).

Charges 12, 18, 26, 29, 31 and 41 failed to hypothesize several phrases of the law of conspiracy which was supported by the evidence. As before pointed out, if the appellant was present, ready to lend assistance if it should become necessary, he was guilty and the same would be true if by his presence he gave countenance to the unlawful act.—*Amos v. State*, 83 Ala. 1, 4.

Charge 20. Ill will or bad feeling existed between the parties, and this alone was a sufficient motive for the crime.—*McAdory v. State*, 62 Ala. 154.

The charge also singled out and gave undue prominence to motive, and was also argumentative.—*Smith v. State*, 88 Ala. 73; *Hussey v. State*, 86 Ala. 34; *Bancroft v. Otis*, 91 Ala. 279, 292.

"The presence or absence of a motive for the commisson of the offense charged is always a subject of inquiry. But it is not in any case indispensable to a conviction; it is not an element of the burden of proof. The law devolves upon the prosecution, whether the agency or connection of the accused is manifested by direct and positive evidence or only by circumstantial evidence that a motive or inducement to commit the offense should be proved."—*Clifton v. State*, 73 Ala. 473, 478.

21 was rightly refused for reasons assigned.

42 was properly refused. If John Morris, Jr. was guilty of manslaughter the jury might likewise find the appellant guilty. It is contended by counsel for appellant that a co-conspirator cannot be convicted of manslaughter. But the question has been decided otherwise on several occasions by this court. The earliest case is that of *Coleman v. State*, 5 Porter, 32. The court said: "Upon authority it seems unquestionable that there may be aiders and abetters in manslaughter; and Russell (1st Vol. 456) lays it down that 'in order to make an abettor to a manslaughter a principal in the felony he must be present aiding and abetting the act committed.' This learned author is sustained by Hale."

(Morris v. The State.)

The rule could not be otherwise in view of §5306 of the code providing that a defendant may be found guilty of any offense which is necessarily included in that with which he is charged.    § 4308 provides that, "all persons concerned in the commission of a felony, whether they directly committed the act constituting the offense or aid or abet in its commission, though not present, must hereafter be indicted, tried and punished as principals." It is the sole province of the jury to fix the punishment under an indictment for murder, and if they see fit, the defendant may be found guilty of manslaughter, and by reason of § 4308 a conspirator is equally guilty and the jury's control over the matter of punishment is identical with that in the case of the principal.

46 is argumentative and invades the province of the jury.    The circumstances there referred to may raise a presumtion against the defendant.

50.    The defendant was convicted of manslaughter, of which offense malice is not an ingredient; this charge, therefore, need not be considered.—*Jarvis v. State*, 138 Ala. 17, 39.

A probability of the defendant's innocence does not entitle him to an acquittal.—*Bowen v. State*, 140 Ala. 65 (Ch. 7).

2AA referred a question of law to the jury.    The son has the right to slay in defense of his father whenever the latter has the right to slay in his own defense, and it was, therefore, for the jury to say when this right arose.    The charge involves the consideration of the principles of self-defense and is subject to the objection pointed out in *Mann v. State*, 134 Ala. 1, 23.

IB was bad.—*Mann v. State*, 134 Ala. 1, 23 (Ch. 41).

3B was an argument as well as an instruction on the effect of the evidence.    Under one phase of the evidence the defendant might have been convicted of murder, being the offense charged in the indictment.

The defendant was acquitted of the "unlawful killing of B. F. Grisham with malice aforethought," and for this reason the charge if good need not be considered.

(Morris v. The State.)

CC, DD and E need not be considered since the defendant was convicted of manslaughter.—*Jarvis v. State,* 132 Ala. 17, 39.

EE, OO and I were substantially given in 1A and BB.

2A, G, KK, NN and Y were properly refused for the reason assigned to No. 18.

K did not hypothesize all of the facts tending to show a conspiracy and was properly refused.

MM. There was evidence from which the jury could find the defendant guilty of manslaughter in the first degree.

Z. There was evidence from which the jury could find the defendant guilty.

ZZ. It was not necessary that the killing of Grisham should have been done maliciously in order to find the defendant guilty.

X. There was evidence from which the jury could find the existence of a conspiracy. This charge was rightly refused.

DENSON, J.—The defendant was tried on an indictment which charges murder in the first degree, a capital offense. § 5004 of the code of 1896 provides that : "When any capital case or cases stand for trial, the court shall at least one day before the same is set for trial, cause the box containing the names of jurors to be brought into the courtroom, and after having the same well shaken, the presiding judge shall then and there publicly draw therefrom not less than twenty-five nor more than fifty of such names for each capital case." It has been uniformly held by this court that this section of the code is mandatory and the record must affirmatively show a compliance with its terms.—*Scott's Case,* (Ala.) 37 South. 366; *Bankhead's Case,* 124 Ala. 14, 26 South. 979; *Watkin's Case,* 89 Ala. 82. 8 South. 134; *Washington's Case,* 81 Ala. 35, 1 South. 18; *Jordan's Case,* 81 Ala. 20, 1 South. 577. Neither the original record nor the one sent up in response to the certiorari shows the number of jurors that were drawn by the presiding judge.

(Morris v. The State.)

The record contains these recitals on the subject: "And this being a capital case, on motion of the solicitor it is ordered by the court that Monday, October 9, 1905, be set for the trial of this case, and that 50 special jurors be drawn and ordered summoned for the trial of this case. Thereupon the court caused the box containing the names of the jurors for Limestone county to be brought into court, and after having the same well shaken, the defendant being present in open court, the presiding judge then and there publicly drew the following names from the jury box, to-wit." The names are not set out and there is nothing in the record to show just how many names were drawn. The fact that 50 were ordered does not show that 50 were in fact drawn from the box. The judge may have drawn a number less than 50 and the box may have been exhausted. While we can in many instances presume that a court or a judge has complied with the law, this is not one of the instances, as the facts must affirmatively appear of record. Authorities supra. If for no other reason, this case will have to be reversed on account of this defect in the record. We do not mean to decide that it is essential to a compliance with § 5004 of the code of 1896 that the names of the jurors should be set out, but that the order should affirmatively show that the number ordered to be drawn were drawn.

The evidence adduced on the trial, as appears from the bill of exceptions, showed: That the homicide occurred on the 25th day of June, 1904, in Limestone county, at Baker's Mill, where there was a large gathering of people; the occasion being a neighborhood barbecue or picnic. That among those present were the defendant, his three sons, John Morris, Jr., Walter Morris, and Eddie Morris; also the wife of John Morris, Jr. and three small children of Walter Morris. It is not contended that the defendant killed deceased or that he did him any injury whatever with his own hand. But he was tried and convicted on the theory that he was either a conspirator with his son, John Morris, Jr., who did the killing, or that he aided and abetted his son, or was pres-

(Morris v. The State.)

ent to aid and abet him. "The distinction between an accessory before the fact and a principal, and between principals in the first and second degree, in the cases of felony, is abolished by statute; and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid or abet in its commission, though not present, must be indicted, tried, and punished as principals."—Code 1896 §4308; *Jolly's Case*, 94 Ala. 19, 10 South. 606; *Tanner's Case*, 92 Ala. 1, 9 South. 613; *Tully's Case*, 102 Ala. 25, 15 South. 722.

When by prearrangement, or on the spur of the moment, "two or more persons enter upon a common enterprise or adventure, and a criminal offense is contemplated, then each is a conspirator, and if the purpose is carried out each is guilty of the offense committed, whether he did any overt act or not. This rests on the principle that one who is present, encouraging, aiding, abetting, or assisting, or who is ready to aid, abet, or assist, the active perpetrator in the commission of the offense, is a guilty participant, and, in the eye of the law, is equally guilty with the one who does the act. Such community of purpose, or conspiracy, need not be proved by positive testimony. It rarely is so proved. The jury are to determine whether it exists, and the extent of it, from the conduct of the parties and all the testimony in the case." —*Tanner's Case*, 92 Ala. 1, 9 South. 613; *William's Case*, 81 Ala. 4, 1 South. 179, 60 Am. Rep. 133; *Martin's Case*, 89 Ala. 115, 8 South. 23, 18 Am. St. Rep. 91; *Gibson's Case*, 89 Ala. 121, 8 South. 98, 18 Am. Rep. 96; *Elmore's Case*, 110 Ala. 63, 20 South. 323; *Evans' Case*, 109 Ala. 13, 19 South. 535; *Raiford's Case*, 59 Ala. 106.

With respect to the question of conspiracy or common purpose to kill the deceased, Doc Grisham, it has been strenuously argued in the brief of appellant's counsel that, before declarations of the defendant tending to show such conspiracy are admissible as evidence, it must appear by evidence aliunde that a conspiracy existed; in other words, that in this respect the conspiracy and not the homicide constitutes the corpus delicti, and not-

withstanding the proof clearly, and without dispute showed that the homicide was committed, the declarations of the defendant himself tending to show the conspiracy to kill deceased are not admissible, in the absence of other proof preceding the proof of the declarations, which tended to show the conspiracy. We fully recognize the well-established rule of evidence that, before declarations of a co-conspirator are admissible against another, a foundation must be laid by proof sufficient, in the opinion of the judge presiding, to establish prima facie the existence of such conspiracy.—*Martin and Flinn's Case*, 28 Ala. 71; *Johnson's Case*, 29 Ala. 62, 65 Am. Dec. 383; *McAnally's Case*, 74 Ala. 9; *Hunter's Case*, 112 Ala. 77, 21 South. 65; *Johnson's Case*, 87 Ala. 39, 6 South. 400; *Thomas' Case*, 133 Ala. 139, 32 South. 250. But it must be borne in mind that the defendant is not indicted for a conspiracy to commit murder, but for the murder itself; further, that it is not the declarations of a co-conspirator, but of the defendant, that are the subject of this discussion. Hence the insistences of the defendant in this respect are inapt, as is also the distinction with respect to accessories before and after the fact, drawn and argued by counsel and bottomed on the *Tally Case*, 102 Ala. 25, 15 South. 722.

Upon these considerations we think the court did not err in allowing Mrs. M. A. Price to testify that a few minutes after the difficulty she heard the defendant say, "We have come here to kill Doc Grisham and we are going to do it." Its tendency was to show a common purpose between him and his son to kill Grisham, or at least it was competent to go to the jury, and it was for that tribunal to determine its weight, in connection with all the other evidence, including the denial of the defendant that he gave utterance to the declaration. For the same reason the evidence of Mrs. A. J. Grisham that, "shortly after the shooting of B. F. Grisham (Doc) by John Morris, Jr., she heard Mrs. Ida Grisham screaming, 'They have killed Doc Grisham,'" and at this time she saw the defendant and heard him say, "I hope we've

done him up, and if we haven't I will go back and finish him." It may be that the statement of Mrs. Ida Grisham, apart from the reply of the defendant, was subject to the objection made to it; but the statement of the defendant at the time was evidently in response to Mrs. Grisham's statement, at least it was for the jury to determine whether it was or not, and, if it was, then it was explanatory of the defendant's declaration, which tended to show bad feeling on the part of the defendant, and also tended to inculpate the defendant.—*Morris' Case*, 39 South. 608; *Jones' Case*, 96 Ala. 102, 11 South. 399.

The evidence of witness Malone and Mrs. M. A. Price that about ten minutes after the shooting they heard defendant say he would kill every damned Grisham by the name was properly admitted. The tendency of the declaration was to show malice on the part of the defendant. Its weight was a question to be determined by the jury.—*McManus' Case*, 36 Ala. 285; *Plant's Case*, 140 Ala. 52, 37 South. 159; Kerr on Homicide, p. 475, § 430. Nor did the fact that the declaration did not particularize the deceased by his given name render it inadmissible. It was for the jury to determine whether the deceased was referred to.—*Harrisons' Case*, 79 Ala. 29; *Anderson's Case*, 79 Ala. 8. The facts and attendant circumstances under which the several declarations were made affirmatively show that the declarations were made voluntarily, and there could be no valid objection that a proper predicate was not laid for the admission of them.—*Bush's Case*, 136 Ala. 85, 33 South. 878; *Stone's Case*, 105 Ala. 60, 17 South. 144; *Price's Case*, 117 Ala. 114, 23 South. 691.

W. H. McClellan, the first witness examined by the state, testified that the first thing that attracted his attention was that he heard some one remark, "There is going to be a fight." At the last term, on an appeal by John Morris, Jr., from a judgment of conviction for the killing of the deceased, Doc Grisham, we said of this declaration: "That the undisputed evidence showed that

(Morris v. The State.)

the difficulty or 'fuss' almost immediately ensued between Morris and the deceased, and, if it should be conceded that the court erred in admitting the declaration, we are satisfied that no injury resulted therefrom to the defendant"—citing code 1896, § 4333. *Morris' Case*, 39 South. 608. The facts in the case at bar differentiate it from that case, in that here we have evidence tending to show a conspiracy, and one theory of the prosecution was that the killing was the result of a conspiracy. From the remark objected to the jury might have been left to infer a conspiracy, without proof that one of the alleged conspirators made it. We think in this case the evidence was inadmissible, and the court erred in not sustaining the objection to it.

Witness Tucker was permitted to testify that shortly before the killing he was standing in a crowd near the dance ring and the defendant was dancing, that he heard the defendant say while dancing: "Where is Doc Grisham? Oh, Doc! Doc!! come and dance some while you are mad." It was a disputed fact on the trial as to who provoked the difficulty in which Grisham was killed, the defendant or the deceased, and any evidence that would cast light on the status of defendant's mind with respect to Grisham was competent, and we think this evidence was competent for that purpose. Its weight may be slight, but with that we are not dealing. That is a jury question. Then the admissibility of this evidence is strengthened by the declaration made by defendant after the difficulty, as testified to by Mrs. Price: "We've come here to kill Doc Grisham and we are going to do it."—*Morris' Case*, (Ala.) 39 South. 609; *Armor's Case*, 63 Ala. 173.

All that was said or done by defendant in reference to Doc Grisham on the day of the difficulty and leading up to the difficulty was competent. Upon this consideration the testimony of Mrs. B. F. Grisham, widow of the deceased, "that about a half hour before the difficulty she heard the defendant at the dinner table curse and call Doc Grisham's name, but did not understand

what he said," was competent. Especially so when taken in connection with the proof of defendant's declaration, made after the difficulty, "We've come here to kill Doc Grisham and we are going to do it."—*Armor's Case*. 63 Ala. 173.

Witness Colbert was permitted to testify, among other things, as follows: "I heard the defendant at the dinner table say, 'Eat, drink, and be merry, and we will shell these damned woods down directly?" In connection with the other evidence in the case, we think there was no error in admitting this evidence.

The proof we think sufficiently showed that John Robinson's permanent residence was in the state of Tennessee. He had not been subpœnaed, and his evidence given on the preliminary trial of this defendant, with others, was properly admitted.—*Lett's Case*, 124 Ala. 64, 27 South. 256. and authorities there cited; *Wilson's Case*, 140 Ala. 43, 37 South. 93; *Jacobi's Case*, 133 Ala. 1, 32 South. 158.

The motion made by the defendant to exclude the state's evidence as to the shooting of B. F. Grisham (deceased) on the grounds named is without merit. The evidence cannot be said to be free from inference that the defendant conspired to kill Grisham, or that he aided or abetted his son, who killed him. To show a conspiracy to do an unlawful act it is not indispensable that the evidence should show the existence of the conspiracy any definite time prior to the doing of the act. It may have arisen on the spur of the moment. Nor is it necessary that the conspiracy or common purpose should be shown by positive evidence, but its existence may be inferred from all the attendant circumstances accompanying the doing of the act, and from conduct of the defendant subsequent to the criminal act.—*Tanner's Case*, 92 Ala. 1, 9 South. 613; *Williams' Case*, 81 Ala. 4, 1 South. 179, 60 Am. Rep. 133; *Martin's Case*, 89 Ala. 115. 8 South. 23, 18 Am. St. Rep. 91; *Gibson's Case*, 89 Ala. 121. 8 South. 98, 18 Am. Rep. 96; *Elmore's Case*, 110 Ala. 63, 20 South. 323; *Evans' Case*, 109 Ala. 13, 19 South. 535;

*Johnson's Case*, 29 Ala. 62, 65 Am. Dec. 383; *Scott's Case*, 30 Ala. 503; *Buford's Case*, 132 Ala. 6, 31 South. 714.

It has been suggested and seriously argued by counsel for appellant that the evidence for the state should have been excluded upon the ground stated in the motion, "that no conspiracy is shown." We have adverted to the tendencies of the evidence in this respect, and are satisfied that this was a jury question. But the defendant's counsel urged that, when this case was before this court on appeal by the state from an order granting defendant bail on an application for habeas corpus, this court must of necessity have held that the evidence before it would not authorize or sustain a conviction for a capital offense, and that therefore there was no evidence of a conspiracy. It may be true that the evidence contained in the record in that case did not warrant a conviction for the capital offense, but it does not follow that, because the court affirmed the order of the judge allowing bail, the state was thereby precluded from prosecuting the defendant for murder in the first degree and from introducing other evidence. Nor does it follow that the evidence contained in the record now before us is the same as was the evidence in the record on the appeal referred to. Counsel in their brief expressly disclaim any contention that the guilt or innocence of the defendant became res adjudicata by the decision made in the habeas corpus case by this court. But they contend that in that case the court having determined that there was no evidence upon which a trial court could permit a conviction for murder in the first degree to stand, therefore there was no authority for the jury to find for a lesser offense than murder in the first degree, and the court should have excluded the evidence. It seems to us that this argument, logically followed, would lead to the position that the ruling of the court on the application for bail became res adjudicata. The position, however, of the defendant seems to be that, if two or more conspire to commit a murder, there can be

no conviction for a less offense than murder; in other words, that there cannot be aiders and abettors in manslaughter. It is sufficient to reply to this position or contention that this court has expressly held to the contrary, and we see no reason for departing from the holding.—*Coleman's Case*, 5 Port. 32; *Martin's Case*, 89 Ala. 115, 8 South. 23, 18 Am. St. Rep. 91; Code 1896, § 5306.

What occurred from the time that Grisham and the defendant walked to the place at which the difficulty occurred to the conclusion of the affray was a continuous transaction, and all that was said and done by the parties to it while the affray was in progress was of the res gestæ.—*Wood's Case*, 128 Ala. 27, 29 South. 557, 86 Am. St. Rep. 71; *Dixon's Case*, 128 Ala. 54, 29 South. 623; *Armor's Case*, 63 Ala. 173; *Stitt's Case*, 91 Ala. 10, 8 South. 669, 24 Am. St. Rep. 853; *Smith's Case*, 88 Ala. 73, 7 South. 52; *Seam's Case*, 84 Ala. 411, 4 South. 521; *Amos' Case*, 83 Ala. 1, 3 South. 749, 3 Am. St. Rep. 682; *Plant's Case*, 140 Ala. 52, 37 South. 159. In this view, the shooting of McClellan by defendant, the drawing of a second pistol by John, Jr., and, to repeat, everything done and said by the parties while engaged in the difficulty was competent to be shown in evidence.

The evidence elicited by questions propounded by the solicitor to the witness, John Morris, Jr., with respect to a conversation he had with Tom McLemore in November, 1903, was not competent as substantive evidence against the defendant, and we do not apprehend that it was introduced in that light, but only to show the animus of the witness towards the deceased, and thus to affect the credibility of the witness' evidence. It went to witness' credibility. We think the evidence was competent for this purpose, and was properly admitted against the specific objections made by the defendant. That the court did not limit it to this is not a matter of which the defendant can complain, in the absence of a motion on his part to the court to so limit it. It may be that the state should have been confined to the proof of the simple fact that there was a threat made by the wit-

ness against deceased, or previous ill will. If an objection had been made to giving the details of the occurrence referred to, it should have been sustained.—*Jordan's Case*, 79 Ala. 9. The witness having denied making the statement, it was competent to offer evidence that he did make it.

On cross ex-amination of the defendant as a witness, the state was permitted to ask him if he did not; "that day after the difficulty, in response to a question asked him by Earl McGlocklin, while he was still on the barbecue grounds, as to whether or not witness was hurt much, he replied, 'Not a damned bit; but, by G——d, I am going to hurt somebody before I leave.'" The witness had testified that, when the deceased knocked him down, he jumped on him, caught him in the throat with his left hand, and began to beat him in the face with his right hand. Whether or not the defendant was hurt and the extent of his injuries was a material question in the case. The contention of the state was that deceased struck him only one blow, while the defense contended that he was struck several times by the deceased and badly hurt. If defendant said that he was not hurt, then it was proper to go to the jury as contradictory of his evidence that deceased knocked him down, caught him in the throat, and struck him several blows. If the question coupled matter that was illegal with that which was legal, the objection made did not properly raise the question.

This brings us to the exceptions reserved by the defendant to parts of the oral charge of the court and to charges refused to the defendant. The court in its oral charge instructed the jury, among other things, as follows: "I charge you, gentlemen of the jury, that the doctrine of the law of self-defense has no field of operation in this case. There is no room for a plea of self-defense in this cause. There is no field of operation for such defense." This was a charge on the effect of the evidence. and the court erred in giving it. In his own evidence and that of his son, John Morris, Jr., we think may be

found sufficient tendencies to require a submission of the question of self-defense to the jury under proper instructions by the court. We will not speak of the tendencies in detail, lest we might unduly magnify or minimize some of them. Then it must be remembered, that there was evidence rebutting the theory of a conspiracy. In the report of the case of *Morris v. State,* (Ala.) 39 South., on page 610, the authorities applicable to the case with respect of the doctrine of self-defense are collated. The court is not clothed with authority to take any material question of fact from the jury, when there is any tendency in the evidence to support it.

Quite a number of written charges were given at the request of the defendant, and quite a number were refused to him. Charges similar to refused charge 7 have been so often condemned by this court that it is hardly necessary to do more than cite an authority.—*Mann's Case,* 134 Ala. 1, 32 South. 704.

Charge 12. refused to defendant, is in this language: "I charge you, gentlemen of the jury, that you cannot find this defendant guilty as an aider or abettor of the killing of B. F. Grisham, if he gave no assistance or uttered no word to the person doing the killing, if the defendant was not present by preconcert, special or general, nor present with the knowledge of the person doing the killing with intent to aid him, unless he actually took part in the killing himself." In the case of *Raiford v. State,* 59 Ala. 106, this court defining the words "aid and abet," said: "The words 'aid and abet,' in legal phrase, are pretty much the synonyms of each other. They comprehend all assistance rendered by acts or words or encouragement or support or presence, actual or constructive, to render assistance should it become necessary. No particular acts are necessary. If encouragement be given to commit the felony, or if, giving due weight to all the testimony, the jury are convinced beyond a reasonable doubt that the defendant was present with a view to render aid, should it become necessary, then that ingredient of the offense is made out." In the case of *State*

[Morris v. The State.]

*ex rel. Attorney General v. Tally,* 102 Ala., on page 66,
15 South. 722, there the responsibility of Tally for a
homicide committed by another, upon the theory that
Tally was a principal in the second degree at common
law, was considered. The homicide was committed at
Stevenson by Skelton, while Tally was at Scottsboro,
several miles away; but it was held that the evidence
showed Tally was constructively present, and the ques-
tion under discussion was whether or not the evidence
showed that Tally aided and abetted Skelton in the com-
mission of the homicide. The court there reviewed the
definition of the words "aid and abet," as given in the
Raiford case, and said: "The definition was sufficient
for the case then in hand, and it is in the form not infre-
quently found in the books. But it is incomplete. Mere
presence for the purpose of rendering aid obviously is
not aid in the substantive sense of assistance by an act
supplementary to the act of the principal. Nor is it aid
in the original sense of abetting, nor abetting in any
sense, unless presence with the purpose of giving aid, if
necessary, was preconcerted or in accordance with the
general plan conceived by the principal and the person
charged as an aider or abettor, or, at the very least, un-
less the principal knew of the presence, with intent to
aid, of such person. * * * And in the nature of things
the fact of presence and purpose to aid could not incite
or encourage or embolden the principal unless he knew
of the existence of that fact. * * * The definition we have
quoted is, as an abstract proposition, clearly at fault. As
applied in the concrete to cases of confederacy as it is,
we undertake to say, whenever it is stated in this form,
it is free from objection. But in the absence of confeder-
acy, or at least of knowledge on the part of the actual
perpetrator of a crime, one cannot be a principal in the
second degree who is present intending to aid and does
not aid by word or deed. The definition must go further.
*It should appear by it that, to be an aider or abettor
when no assistance is given or word uttered, the person
so charged must have been present by preconcert, spec-
ial or general, or at least to the knowledge of the prin-*
7

*cipal, with the intent to aid him."* So it appears that the charge now under discussion is based upon that portion of the opinion of the court as italicized above. "Whenever a father engages in a fight, the tendency of that act is to incite a son, who may be standing by, to acts of violence towards the antagonist of the father. This tendency may be affirmed in respect to many other ties of kindred, or in many instances of merely close companionship. What rash or violent act the bystanding son, kinsman or comrade may be moved to do depends in a great measure upon the quality of his tempter, the strength of his affection, and the notion, often mistaken, that he may hastily gather under the excitement of the moment, as to who is at fault, and to be held responsible for bringing on the conflict. And if the bystanding son, other kinsman, or comrade should of his own volition, by an independent act of violence, slay the antagonist, the party engaged in the fight should not be charged with this act merely because he was engaged in a conflict with the deceased, and in that way, but in that way only, incited the fatal act. This is not enough to show a criminal intention. Something more must appear. He must have purposely incited or encouraged the party in that course of violence that led to the homicide, or done some overt act himself, with a view to that result, and that in some degree contributed thereto."—*Woolweaver v. State,* (Ohio) 34 N. E. 352, 40 Am. St. Rep. 667; *Goins v. State,* 46 Ohio St. 457, 21 N. E. 476; *Tanner's Case,* 92 Ala. 1, 9 South. 613; *Jordan's Case,* 79 Ala. 9. It is well settled that a party may aid or abet another by menace, gesture, or act. This is clearly recognized by all the authorities. We think on the facts in the *Tally Case* the law is correctly enunciated there. The defendant's counsel framing charge 12, attempted to follow the *Tally Case;* but as the charge is framed it is misleading, if not inherently bad, and in that it uses the word "or" where "and" should have been used between the words "assisted" and "uttered." Furthermore, there is evidence tending to show that defendant, at the time John Morris, Jr., killed deceased, was standing in front of

deceased with his hand near his pocket as if attempting to draw a weapon. If this evidence was believed, its tendency was to show a demonstration by defendant, a menace, which the jury had a right to consider in reference to the question of aiding and abetting. The charge does not hypothesize aiding and abetting by conduct, demonstration, or menaces, and for this reason was well refused.

The *Tally Case* recognizes the principle that, if the killing was done in pursuance of a common purpose to do the act, that would be sufficient. And the definition given in the *Raiford Case* of the terms "aid" and "abet" would be free from objection in a case where the tendency of the evidence is to show a conspiracy. The charge under consideration seems to negative the presence of the defendant as a conspirator. But charge 18, refused to the defendant, entirely ignores the theory of a conspiracy, and for this reason, if for no other, must be held bad. Whether or not defendant conspired to kill deceased was a question for the jury. Where there is any evidence, however slight, tending to support a given contention, it cannot be ignored; the contention being a material one. Besides, it would seem that in giving charge 35 the defendant had full benefit of all that is contained in charge 18.—*Frank's Case*, 27 Ala. 37; *Elmore's Case*, 110 Ala. 63, 20 South. 323; *Alston's Case*, 109 Ala. 51, 20 South. 81; *McLeroy's Case*, 120 Ala. 274; *Amos' Case*, 83 Ala. 1, 3 South. 749, 3 Am. St. Rep. 682; *Pierson's Case*, 99 Ala. 148, 13 South. 550.

Charge 20 assumed that all the evidence of conspiracy was circumstantial evidence. The declaration, if made by the defendant, "We've come here to kill Doc Grisham," is a confession, or in the nature of a confession, and therefore not circumstantial evidence. Furthermore, it is not indispensible that the state should prove a motive for the commission of the crime, and the charge was argumentative.—*Jackson's Case*, 136 Ala 23, 34 South. 188; *Hornsby's Case*, 94 Ala. 55, 10 South. 522.

Charge 21 is an invasion of the province of the jury. Besides, it does not contain a true statement in point of fact.

Charge 26 seems to state a correct proposition, but it was practically covered by given charges 24, 39, 45, and 47, and its refusal was, therefore, not error.

Charge 29 is practically covered by given charges 32, 33, and 24.

Charge 31 ignores the evidence of conspiracy. Besides it seems to be covered by given charges 47 and OO.

Charge 41 may be condemned on two or more grounds. In the first place it assumes that malice on the part of John Morris, Jr., was not indulged in by the defendant. It is misleading, as the defendant may have been convicted of manslaughter (and he was), an offense not involving malice.—*Littleton's Case,* 128 Ala. 31, 29 South. 390; *Thompson's Case,* 131 Ala. 18, 31 South. 725; *Jarvis' Case,* 138 Ala. 17, 34 South. 1025.

Charge 42 is subject to the criticism made with respect of charge 41, that it is misleading. But the theory of the defendant, as shown by refused charge MM is, that there cannot be aiders and abettors in manslaughter. This theory is contrary to the decisions of this court as before noted.—*Coleman's Case,* 5 Port. on page 41; *Martin's Case,* 89 Ala. on page 119, 8 South. 23, 18 Am. St. Rep. 91; *Ferguson's Case,* 141 Ala. 20, 37 South. 448; Code 1896, § 5306. The charge was properly refused, as also were charges MM and ZZ.

Charge 46 invades the province of the jury.

Charge 50. Malice is not an ingredient of manslaughter, and, if charge 50 is a good charge, the refusal of it was rendered innocuous by the verdict finding the defendant guilty of manslaughter. Besides it may be said of the charge that it is misleading.

Charge 53 is a copy of charge 6, which was held to be a good charge in *Whitaker's Case,* 106 Ala. 30, 17 South. 456. The charge should have been given.

In given charges 25, 28, 35, 38, and J, it seems that the defendant had the benefit of the propositions contained in refused charge 2A, and some of the charges were even more favorable to the defendant than charge 2A, and by giving charge 36 the court rested the conviction alone upon the hypothesis that the jury should find beyond a

reasonable doubt that a conspiracy actually existed between the defendant and John Morris. So the court was under no duty to give charge 2A.

Charge AA was properly refused. It relates to self-defense, and does not set forth or define the constituent elements of self-defense. The same criticism is applicable to charge 1B.—*Mann's Case*, 134 Ala. 1, 32 South. 704.

Charge 3B is a mere argument and was properly refused.

Charges CC, DD, and E need not be considered, as the verdict was for no higher offense than manslaughter.— *Jarvis' Case*, 138 Ala. 17, 34 South. 1025.

Charge EE is incomplete, in that it ignores the tendency in the evidence that the father (defendant) entered willingly into the difficulty or that he encouraged it. Such charges should negative willingness in entering into the difficulty.—*Gilmore's Case*, 126 Ala. 21, 22 South. 595; *Mitchell's Case*, 129 Ala. 23, 30 South. 348; *Wilson's Case*, 128 Ala. 17, 29 South. 569; *Wood's Case*, 128 Ala. 27, 29 South. 557, 86 Am. Sta. Rep. 71; *Sherill's Case*, 138 Ala. 3.

Charge G was properly refused. The postulate that the burden of proof was on the state to prove that defendant was not free from fault in bringing on the difficulty, without more, was calculated to mislead the jury to believe that retreat and imminent peril were not important factors in the case.

Charge K is argumentative and misleading.

Charges KK and NN are patently bad for reasons given in a former part of this opinion pertaining to the motion to exclude evidence offered by the state.

Refused charge OO ignores the evidence tending to show a conspiracy. Moreover, John Morris, Jr.'s, right of self-defense depended somewhat upon the status that the defendant occupied with reference to the difficulty and this the charge entirely ignores.—*Wood's Case*, 128 Ala. 27, 29 South. 557, 86 Am. St. Rep. 71; *Morris' Case*, (Ala.) 39 South. 608.

Charge X, refused to the defendant, invades the province of the jury.

[Morris v. The State.]

Charge Y pretermits the theory of a conspiracy formed to kill the deceased, and deals alone with the doctrine of aiding and abetting.' We think the charge properly hypothesizes that John Morris, Jr., must have had knowledge of the acts or words; but we think that the charge goes too far in hypothesizing that he must have had knowledge that the acts or words were done or said for the purpose of aiding or encouraging. If under the attendant circumstances he was led to believe that the acts or words were done or said to encourage him, then that would be sufficient. Having reason to believe that a purpose exists is not the same thing as knowing that it does exist. The charge was properly refused.

The charge designated XYZ, refused to the defendant, was properly refused on the authority of *Sullivan's Case,* 102 Ala. 135, 15 South. 264, 48 Am. St. Rep. 22. In addition to the reasons assigned for holding the charge bad, we think the charge should have negatived willingness on the part of the defendant in entering into the difficulty and encouragement of it.—*Gilmore's Case,* 126 Ala. 20, 28 South. 595.

We think that it was not in the province of the court to instruct the jury that there was no evidence in the case that defendant aided or abetted John Morris, Jr., in killing Grisham. Having so instructed the jury, it was the duty of the court to recall the jury and in proper manner correct the error. Of course this could only be properly done in the presence of the defendant and his counsel. The presiding judge should sedulously avoid any communication with the jury with reference to the case in the absence of the defendant and his counsel. As the cause must be reversed on other points, and the matter complained of will not probably occur again, we deem it unnecessary to say more with respect to this matter.

For the errors pointed out the judgment of conviction must be reversed, and the cause remanded.

Reversed and remanded.

HARALSON, DOWDELL, and ANDERSON, JJ., concur.