# Ferguson *v.* The State.

## *Indictment for Murder.*

1. *Conspiracy; when evidence of facts happening after killing admissible; res gestae.*—On a trial under an indictment for murder, where it is shown that the deceased was killed by the son of the defendant, and there was evidence tending to show a conspiracy between the defendant, and his son to kill the deceased, growing out of a previous difficulty between the son and the deceased; and it is further shown that just after the deceased with his mother passed by the store of the defendant, where he and his son with orders were standing, the son took a shot gun from the store and went ahead of the deceased to a barn, and the defendant locked his store and went towards the barn with a pistol in his hand, and having gone but a short distance, the son fired from the barn upon the deceased and inflicted a mortal wound, and that the defendant continued, with his pistol in his hand, until he had nearly reached the place where the deceased lay dead, when he met the latter's mother, who had started back towards the store, crying and upbraiding the slayer, the testimony of a witness,

[Ferguson v. The State.]

that when the defendant so met the mother about a minute or two after the killing, he said to her, "Where in the hell are you going?" is admissible; such statement being a part of the *res gestae* of the killing.

2. *Conspiracy; admissibility of evidence.*—On a trial under an indictment for murder where it is shown that the deceased was killed by the son of the defendant, and there was evidence tending to show that there was a conspiracy between the defendant and his son to kill the deceased, who had had a difficulty with defendant's son, as a circumstance tending to show that the defendant aided or abetted in the commission of the offense, it is permissible for the State to introduce testimony that three or four days before the killing, the defendant discharged loads from his shotgun and reloaded and placed the gun in his store; it being shown that the defendant's son inflicted the mortal wound with said gun, which he took from defendant's store.

3. *Same; same.*—In such a case, testimony that the defendant, when asked what he would do about the difficulty between his son and the deceased, said he was not going to do anything himself, but did not know what his son would do about it, is relevant and admissible; such testimony tending to show in connection with the other evidence, a sinister design on the part of the son and the defendant's participation therein.

4. *Same; same.*—In such a case, testimony that four or five days before the killing, defendant said that if his son killed the deceased, that he, the defendant, had 300 acres of land to spend to get him out of it, and that in the same conversation, when speaking of the deceased, he said, it would not be any more harm to kill him than to kill a dog, is relevant and admissible.

5. *Homicide; charge as to conspiracy.*—On a trial under an indictment for murder, where there is evidence tending to show that the defendant, though he did not fire the fatal shot, conspired with his son, who did the shooting, for the killing of the deceased, and there is introduced evidence tending to show that there was such a conspiracy between the defendant and his son, a charge requested by the defendant is erroneous and properly refused which instructs the jury "that there is no evidence in this case showing that this defendant, in any way, conspired with" his son to take the life of the deceased, or do him other bodily harm, but that the undisputed evidence shows there was no such conspiracy.

6. *Indictment for murder; conspiracy; manslaughter.*—On a trial under an indictment for murder, where there is evidence tend-

[Ferguson v. The State.]

ing to show that the defendant, though he did not fire the fatal shot, conspired with his son, who did the shooting, for the killing of the deceased, if the defendant is convicted of manslaughter in the first degree, which is an acquittal of the charge of murder, upon the second trial of such case, after a reversal of the first judgment, charges requested by the defendant are erroneous and should be refused which instruct the jury that there can be no conspiracy to commit the offense of manslaughter in the first degree.

7. *Charge of court to jury; erroneous when upon part of the evidence only.*—A charge in a criminal case requested by the defendant which bases the right of the defendant to an acquittal upon the jury's belief of only a part of the evidence, without consideration of all the evidence of the case, is erroneous and properly refused.

8. *Homicide; conspiracy; charge of court to jury.*—On a trial under an indictment for murder, where there is evidence tending to show that the defendant was a conspirator with the person who fired the fatal shot, a charge which instructs the jury that they must acquit the defendant, if they have any reasonable doubt as to whether or not he conspired to bring about the homicide, or if they had a reasonable doubt of his having aided or abetted in the killing, is calculated to mislead the jury, and properly refused.

9. *Same; same; same.*—In such a case, a charge which instructs the jury that if they believe from the evidence that the fatal shot which killed the deceased was fired by the son of the defendant, "and without the knowledge, connivance or assent of this defendant, then the jury must find this defendant not guilty," asserts a correct proposition of law, and should be given at the request of the defendant; and its refusal will work a reversal of a judgment of conviction.

APPEAL from the Circuit Court of St. Clair.

Tried before the Hon. JOHN PELHAM.

The appellant in this case, Buck Ferguson, was indicted for the murder of Will Andrews. He was tried and convicted of manslaughter in the first degree, and sentenced to imprisonment in the penitentiary for two years. From this judgment he appealed to the Supreme Court, where said judgment was reversed, and the cause was remanded. Upon the second trial, from the judgment in which the present appeal is prosecuted, he pleaded his former conviction of manslaughter as an

acquittal of murder in the first and second degree, which plea was confessed by the State. On the trial he was found guilty of manslaughter in the first degree, and was sentenced to imprisonment in the penitentiary for five years.

In addition to the facts set forth in the opinion, there was evidence introduced on the part of the State tending to show that there was a conspiracy between the defendant and his son, John Ferguson, to kill Will Andrews. The other facts of the case necessary to an understanding of the decision on the present appeal are sufficiently stated in the opinion.

The defendant requested the court to give to the jury each of the following written charges, and separately excepted to the court's refusal to give said charges as asked: (1.) "If the jury believe all the evidence in this case, they must find the defendant not guilty." (3.) "The court charges the jury that there is no evidence in this case showing that this defendant in any way conspired with John Ferguson to take the life of Will Andrews, or do him other bodily harm; but that the undisputed evidence in the case shows that there was no such conspiracy between this defendant and John Ferguson." (9.) "The court charges the jury that the offense with which the defendant is now indicted and on trial in this case is manslaughter in the first degree; that manslaughter in the first degree is an unlawful killing as the result of passion suddenly engendered by present provocation; and that in law there could be no conspiracy to commit such offense; and that in law there could have been no aiding or abetting John Ferguson in the commission of said offense by defendant, unless defendant was present and so aiding or abetting at the time of the killing." (10.) "The court charges the jury that the jury cannot find the defendant guilty of any offense in this case, because of defendant's having conspired with John Ferguson to take the life of Will Andrews, or do him other bodily harm, or because of defendant's having aided or abetted John Ferguson in the killing, so long as any one juror may have a reasonable doubt as to whether or not this defendant ever did so conspire

with said John Ferguson or aid and abet him in such killing." (11.) "If the jury find from the evidence that all the defendant did toward the killing of Will Andrews was to, on one occasion, say to the witness Talbert, and about a week before the killing, that 'We were expecting Will Andrews down here and wanted to be ready for him,' and on another occasion say to the witness A. O. Washburn in the hearing of witness, Mrs. Susie Washburn, that he had tried to keep the trouble down between John and Will, and had thought it down, but the old man Andrews had come down to the store drunk, with a gun and had been throwing off on John, and had got John stirred up again, and had sent for Will to come down with his gun; that if they came back again, he did not know whether he could keep him down; that he would like for Washburn to see Will and see if he could not get it settled; that if they did start it up again and John got into trouble, he had 200 or 300 acres of land, and would spend it and everything else he had to get John out of the trouble; that if John should kill one of the Andrews, he did not think any more attention would be paid to it than the killing of a dog; that John Ferguson was not present at either of said conversations and knew nothing of them; that the making use of such remarks was all defendant did or said toward the killing, then under all the evidence in this case defendant would not be guilty and the jury should acquit him." (12.) "If the jury believe from the evidence in this case beyond all reasonable doubt that John Ferguson killed Will Andrews by shooting him with a gun; that such killing was done by John Ferguson with malice aforethought, and not in sudden passion engendered by present provocation, then the jury must acquit this defendant, even though the jury may be satisfied from all the evidence beyond all reasonable doubt that prior to such killing this defendant conspired with John Ferguson to so kill said Andrews, or that this defendant actually aided or abetted said John Ferguson in such killing of said Will Andrews.". (13.) "The court charges the jury that if they believe from the

evidence that the fatal shot which took the life of Will Andrews was fired by John Ferguson, and without the knowledge, connivance or assent of this defendant, then the jury must find this defendant not guilty." (14.) "If the jury believe from the evidence in this case that the killing of Will Andrews by John Ferguson was murder, and that this defendant was an accessory to such killing, then the defendant in this case has been acquitted of such murder, and cannot again be put on trial for said offense, and the jury should acquit him."

JAMES A. EMBRY, JNO. W. INZER and SMITH & HERRING for appellant.—There can be no conspiracy to commit manslaughter in the first degree or in the second degree. This is an offense in which there could not be an accomplice unless such accomplice was present aiding and abetting in the act. Manslaughter in the first degree is an offense committed in the heat of blood and on sudden provocation, hence this is one for which one can not be indicted and convicted as an accomplice or co-conspirator. He would have to be present at the time and aiding or abetting in the commission of the offense and would, therefore, be a principal. "The rule is that all offenses admit of accessories except high treason because of the heinousness of the crime—unpremeditated offenses such as manslaughter, etc., because from the nature of the case there can be no accessory before the fact—and misdemeanors because such offences are too trivial to make it necessary to discriminate between perpetrator and advisor."— *Scotts' Case*, 30 Ala. 503; *Elijah Case*, 35 Ala. 428; *White's Case*, 5 Cr. G. C. U. S. 13; Clarks' Crim. Law, §36, 224. There may be aiders or abettors in manslaughter, but to make an abettor principal in the felony he must be present aiding and abetting the act committed.—*State v. Coleman*, 5 Porter 32, 1 Brick. Dig, 450, §39.

MASSEY WILSON, Attorney-General for the State. The testimony of the witness, Mrs. Andrews, the mother of deceased, to which the defendant objected, was properly admitted; being a remark made to her by the

defendant immediately after the killing.—*Ferguson v. State,* 134 Ala. 63; *Seams v. State,* 84 Ala. 410.

Charges 9, 12, 13, 14 proceed upon the erroneous assumption that the defendant could not be convicted of manslaughter unless he was *actually present* when John Ferguson fired the fatal shot. The facts show that if defendant was not in sight of his son when the latter shot deceased he was only separated from him by a mound or hill, a short distance away; that he had a pistol in his hands, and this, together with the circum-stances which caused him to go from his store to this point, would authorize the jury to find that he went there for the purpose of aiding or abetting his son. He was constructively present, ready to render assistance if necessary.—*Ferguson v. State,* 134 Ala. 63, 71; *Brunson v. State,* 124 Ala. 37, 41; *Martin v. State,* 89 Ala. 115; *Raiford v. State,* 59 Ala. 106; *Buford v. State,* 132 Ala. 6.

SHARPE, J.—At the spring term, 1902, of the circuit court, the defendant was, on an indictment charging him with the murder of Will Andrews, con-victed of manslaughter in the first degree, and on appeal the judgment of conviction was reversed. See *Ferguson v. State,* 134 Ala. 63. On his last trial, defendant pleaded the result of the first trial as an acquittal of the charge of murder, and the plea being sustained, he was, on the same indictment, tried for manslaughter and was again convicted of manslaughter in the first degree.

The evidence showed that Andrews while walking in company with his mother along a road which lay close to defendant's store and barn, was shot twice from the barnyard by John Ferguson, a son of defendant. The store was about 150 yards from the barn and had been passed by Andrews and his mother before they reached the barn. Defendant, his son John and others were in the store as Andrews approached it and a bystander, who testified he had heard of a previous difficulty or fight between Andrews and John Ferguson, said to the

latter in defendant's presence, "Yonder comes Will Andrews and his mother now." John then took a shot gun from the store and went ahead of Andrews to the barn. After the latter passed defendant locked his store and went towards the barn with a pistol in his hand. According to some testimony he had gone 12 or 15 steps when his son fired the first shot and a few steps further when the second shot was fired. Defendant continued on with pistol in hand and had nearly reached the place where Andrews lay dead in the road when he met the latter's mother, who had started back towards the store, crying and upbraiding the slayer. A witness testified in substance that when defendant so met the mother and about a minute or two after the killing, he said to her, "Where in the hell are you going?" This statement, if made as the witness testified, was so near in time and place to the killing as to be of the *res gestae* of that occurrence and as such it was admissible.

As a circumstance tending to show defendant aided or abetted in the commission of the offense, the State was properly allowed to introduce testimony to effect that three or four days before the killing, defendant discharged loads from his shot gun into the ground and reloaded and placed the gun in his store. Under the evidence it was taken from the store and used by John Ferguson in shooting Andrews. To show knowledge of a sinister design on the part of his son and as tending in connection with the other evidence introduced, to prove his own participation in that design, evidence that defendant, when asked what he would do about the difficulty between his son and Andrews, said he was not going to do anything himself, but did not know what John would do about it, was relevant and admissible. For the same purpose the State was entitled to introduce testimony to effect that four or five days before the killing defendant said that if John killed Andrews he, the defendant, had 300 acres of land to spend to get him out of it; and that in speaking in the same conversation of Will Andrews and another spoken of as "old man Andrews," he said: "It would not be any more harm in killing one of them than in killing a dog."

In the refusal of requested charges 1, 3, 9, 10, 11, 12, and 14, there was no error. On the former appeal it was held that evidence substantially the same as that adduced on the last trial was sufficient to take to the jury the question of whether the shooting was done in pursuance of a conspiracy formed between defendant and John Ferguson. The same conclusion attaches to the evidence in the present record and is opposed to what is asserted in charge 3. It is not true as is asserted in charges 9, 12 and 14, that because defendant had on the first trial been guilty of manslaughter he ought not to have been again convicted of that offense on evidence that he aided or abetted in the homicide by conspiring with his son for its commission. Our statute (Code, §4308) abolishes the common law distinction between accessories before the fact and the principals in felony and makes guilty as principals "all persons concerned in the commission of a felony whether they directly commit the act constituting the offense, or aid or abet in its commission, though not present." In *Barnett v. People,* 54 Ill. 325, the court declared a principle properly applicable here and which is stated in the head notes of that case as follows: "Where a party has been tried on an indictment for murder and convicted of manslaughter, that is an acquittal on the charge of murder; and if, in such case, a new trial is granted, the accused cannot be put upon his trial again for murder, but only for manslaughter. And upon the second trial in such case, the court may properly instruct the jury, for the prosecution that if they believe the accused guilty of murder, that, of itself, will not justify them in acquitting him of manslaughter, inasmuch as the law only regards him as guilty of manslaughter." See also *Commonwealth v. McPike,* 3 Cush. 181.

Charge 11 by proposing to instruct as to the effect of only part of the evidence introduced to show a conspiracy would have tended to obscure and to divert consideration from other parts of the evidence bearing on the same subject, and was faulty in this respect if not in any other respects.—*Grant v. State,* 97 Ala. 35.

[Ferguson v. The State.]

Charge 10 was calculated to mislead the jury to believe that either a reasonable doubt that defendant connived to bring about the homicide or a like doubt of his having aided therein was sufficient to prevent his conviction, whereas his participation in either of those methods would have authorized his conviction.

We think defendant's requested charge 13 should have been given. It was applicable to the evidence and was hypothesized upon what was in effect an absence of complicity on defendant's part in the act which caused the homicide, such as.if believed by the jury would have entitled him to an acquittal. For the single error committed in the refusal of the last mentioned charge, the judgment must be reversed and the cause remanded.