649 So.2d 1282 (1994)
Ex parte State of Alabama.
Ex parte Michael Anthony SIMMONS.
(Re Michael Anthony Simmons v. State).
1920431, 1920442.
Supreme Court of Alabama.
May 6, 1994.
Rehearing Denied June 24, 1994.
*1283 W. Lloyd Copeland and T. Jefferson Deen III of Clark, Deen & Copeland, P.C., Mobile, for defendant.
James H. Evans, Atty. Gen., and Beth Slate Poe, Asst. Atty. Gen., for the State.
PER CURIAM.
Michael Anthony Simmons was convicted of reckless murder, pursuant to Ala.Code 1975, § 13A-6-2(a)(2). The Court of Criminal Appeals held that the trial court had erred in charging the jury on aiding and abetting, so that court reversed the conviction and remanded the case for a new trial. Simmons v. State, 649 So.2d 1279 (Ala.Cr. App.1992). Both the State and Simmons petitioned this Court for certiorari review. We granted both petitions. The State contends that the Court of Criminal Appeals erred in reversing the judgment of conviction, because it argues that it was not error to charge the jury on aiding and abetting. Simmons argues that the Court of Criminal Appeals erred in not rendering a judgment for him, because he contends that there was insufficient evidence to support a conviction of reckless murder.
A three-year-old child was killed by a bullet fired from a gun while he was a passenger in his mother's automobile. The mother testified that she was driving down a public street when she noticed several men in a pickup truck shooting guns in her direction. She stated that she recognized the man on the back of the truck as the defendant, Simmons. She also testified that she observed several other people on the street, one of whom she recognized as Vernon "Blue" Peterson. She testified that Peterson appeared to be the target of the gunfire. At some point during the gunfire, the child was killed when a bullet entered the car and struck him in the head.
The bullet that killed the child exited the back of his head and was not recovered. Another bullet was recovered from the car in which the child was riding, and an expert witness testified that it was either a 9 mm., a.38 caliber, or a .357 caliber bullet. The expert witness testified that the fatal shot could have been fired from a weapon having any one of those three calibers. A total of 11 expended 9 mm. cartridge cases and 6 expended.38 special cartridge cases were found at the scene; some were found in the bed of the pickup truck and some were found on the street. An expert witness testified that the 9 mm. cartridges had been fired by two different weapons and that at least three different weapons had been fired at the scene. He further stated that, based upon his expertise, he believed that the bullet that killed the child could have been fired from any of the revolvers and semi-automatic pistols that were used in the shoot-out. However, it could not be determined from the evidence presented which of the men fired the fatal shot.
Although he was indicted for murder on two different theories, Simmons was eventually tried and convicted pursuant to Ala.Code 1975, § 13A-6-2(a)(2). In charging a violation of that section, the State alleged that Simmons
"did, under circumstances manifesting extreme indifference to human life, recklessly engage in conduct which created a grave risk of death to a person other than himself, to-wit: by firing a gun numerous times on a crowded street and in the direction of said crowd, and thereby caused the death of another person, to-wit: Leonard Rivers...."
The State proceeded under a theory of accomplice liability. The State conceded at trial and on appeal that it could not prove that Simmons fired the shot that killed the child. However, it contends that the evidence proves that Simmons aided and abetted in the reckless conduct that resulted in the death of the child.

I.

(State's PetitionNo. 1920431)
The Court of Criminal Appeals held that the trial court erroneously instructed the jury that Simmons could be convicted of reckless murder on a theory of complicity. Essentially, the court held that it is "incompatible within the same charged offense" to say that one intends to promote or assist the *1284 commission of reckless conduct. 649 So.2d at 1281. We disagree.
Section § 13A-6-2(a)(2) provides:
"(a) A person commits the crime of murder if:
". . . .
"(2) Under circumstances manifesting extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to a person other than himself, and thereby causes the death of another person...."
This section deals with "reckless murder" or, as it is sometimes called, "universal malice murder" or "depraved heart murder." It requires the prosecution to prove conduct that manifests an extreme indifference to human life and not to the life of any particular person. The purpose of § 13A-6-2(a)(2) is to embrace those homicides caused by such acts as shooting a firearm into a crowd, throwing a timber from a roof onto a crowded street, or driving an automobile in a grossly wanton manner. See Northington v. State, 413 So.2d 1169 (Ala.Cr.App.1981), writ quashed, 413 So.2d 1172 (Ala.1982). This section was written in an attempt to define a degree of recklessness "that cannot be fairly distinguished from homicides committed purposely or knowingly." Model Penal Code and Commentaries, § 210.02, comment 4 (1980), as quoted in Ex parte Weems, 463 So.2d 170, 172 (Ala.1984). Under the concept of reckless murder, the actor perceives a substantial and unjustified risk, but consciously disregards the risk of death.
Alabama's complicity statute, § 13A-2-23, provides:
"A person is legally accountable for the behavior of another constituting a criminal offense if, with the intent to promote or assist the commission of the offense:
"(1) He procures, induces or causes such other person to commit the offense; or
"(2) He aids or abets such other person in committing the offense; or
"(3) Having a legal duty to prevent the commission of the offense, he fails to make an effort he is legally required to make."
This section provides the basic principles for determining criminal liability that is based upon the behavior of another person. It sets out the type of action required and the necessary mental state.
In Ex parte Howell, 431 So.2d 1328 (Ala. 1983), this Court addressed the issue of accomplice liability. There, the defendant, the victim, and the co-defendant were in a room together. The co-defendant was showing the victim a pistol when the defendant exploded some firecrackers in the house. The pistol fired and the bullet struck the victim, killing him. The defendant was charged with manslaughter, but was convicted of the lesser included offense of criminally negligent homicide. The Court of Criminal Appeals affirmed the conviction. On certiorari review, the only issue before this Court was whether a conviction of criminally negligent homicide by way of complicity was inconsistent.
This Court held that a defendant could not be convicted of criminally negligent homicide under a complicity theory, because, it said, complicity and criminally negligent homicide are "fundamentally inconsistent." Howell, supra, at 1330. The Court further said that it is logically impossible to be an accomplice to a criminally negligent homicide. However, Howell does not stand for the proposition that it is logically or legally impossible to be an accomplice to a reckless homicide.
Here, we are not concerned so much with a failure to "perceive a substantial and unjustifiable risk" (criminally negligent homicide, § 13A-6-4) as we are with an offense in which the principal actor does perceive, but consciously disregards, the risk of death. Therefore, we find it to be both logically and legally consistent to impose liability on one whose conduct aids or encourages another who is aware of, and who consciously disregards, a substantial risk of death.
Accomplice liability does not require that the accomplice intend for the principal to act in a reckless manner. Rather, accomplice liability requires only that the accomplice intend to promote or to assist the principal, having knowledge that the principal is engaging in, or is about to engage in, criminal conduct. See § 13A-2-23, Committee Comments. The mental state required for complicity is the intent to aid the principal in *1285 the criminal act or conduct, not the intent of the principal that death occur either intentionally or recklessly. In other words, for a person to be guilty of reckless murder as an accomplice, he need not know or decide whether the principal will act intentionally (§ 13A-6-2(a)(1)) or recklessly (§ 13A-6-2(a)(2)); rather, the accomplice need only have knowledge that the principal is engaging in reckless conduct and intentionally assist or encourage that conduct with the intent to promote or facilitate its commission.
In further support of our conclusion that complicity is consistent with recklessness, we point out that this Court has held that one can be an accomplice to manslaughter, which is also a reckless crime.[1] See generally 2 W. LaFave and A. Scott, Substantive Criminal Law § 6.7(e) (1986). Morris v. State, 146 Ala. 66, 41 So. 274 (1906); Ferguson v. State, 141 Ala. 20, 37 So. 448 (1904); Martin v. State, 89 Ala. 115, 8 So. 23 (1890). In Martin, this Court held that two brothers were equally guilty of manslaughter, regardless of which brother fired the fatal shot:
"The jury were not without testimony from which they could draw the inference that the two Martins had a common purpose to set the law at defiance, and to use whatever force might be necessary to accomplish their object; and that each was ready to assist and encourage the other, if assistance and encouragement should become necessary. [This being so], each was accountable for the act of the other, whether such act was previously intended or not, if it grew naturally and proximately out of the unlawful purpose they had in view."
89 Ala. at 120, 8 So. at 25. We note that the facts of this case are unusual in that one cannot determine who fired the fatal shot. However, we hold that Simmons could legally be found guilty of reckless murder as an accomplice. He was a principal actor in complicity with the reckless conduct of the other shooters on this occasion. He knowingly advanced and participated in reckless behavior (even though we do not know the identity of the person who fired the fatal shot), and that reckless behavior resulted in the death of a three-year-old child who was traveling on a public street where the shooting occurred. In other words, one could conclude from the evidence that Simmons's conduct aided and encouraged another who was aware of, and who consciously disregarded, a substantial risk of death. See Martin v. State, supra. Therefore, the Court of Criminal Appeals erred in reversing the conviction on the holding that Simmons could not aid and abet in the commission of reckless murder.

II.

(Simmons's PetitionNo. 1920442)
Simmons contends that the State presented insufficient evidence to support a conviction of reckless murder. Specifically, he contends that the evidence showed that the shots fired were fired with the intention to kill a specific individual only and were not directed at human life in general. Although this issue was properly raised at trial and before the Court of Criminal Appeals, the Court of Criminal Appeals did not rule on it. However, in the interest of judicial economy and under this Court's "inherent power to do full justice," we will address this issue. See Howell, supra, at 1329.
"Reckless murder" or, as it is sometimes called, "universal malice murder" or "depraved heart murder," requires the prosecution to prove conduct that manifests an "extreme indifference to human life," any human life. As noted above, Simmons contends that this section is not applicable to the present situation because, he says, the intended victim was a particular person. We disagree.
The fact that the families of Simmons and Peterson had been involved in an altercation the night before the child was killed is not in dispute. There was testimony that Peterson had fired shots at Simmons and at some of Simmons's family before the exchange of gunfire in which the child was killed. However, the evidence was that Simmons, as well as several others, was shooting firearms indiscriminately in the general direction of the car in which the child was riding. This spraying of bullets occurred on a public *1286 street in a residential neighborhood in the middle of the day. That the one who fired the fatal shot may have intended to kill a particular person does not take this fact situation out of the scope or concept of reckless murder. Spraying gunfire openly on a public street is reckless conduct that creates a grave risk of death and, in fact, in this case it did cause the death of an innocent person, the child.
As noted in the Commentary to § 13A-6-2 (under the subheading "Transferred Intent"):
"Where the actor intentionally or knowingly does an act that is highly likely to cause death to another person, and as a natural and direct result another person is killed, though not the person subjectively intended to be killed or seriously injured (e.g., arson of public building, blowing up commercial airplane, shooting gun indiscriminately, etc.), the actor is guilty of murder under either § 13A-6-2(a)(1) because he intended `to cause the death of another person,' or § 13A-6-2(a)(2) for recklessly engaging in conduct which creates a grave risk of death and `under circumstances manifesting extreme indifference to human life.'"
Given the specific facts of this case, it does not matter whether Simmons intended to kill Peterson or some other particular person. Rather, the conduct of the parties involved in the shooting created a grave risk of death and was, under the circumstances, a manifestation of extreme indifference to human life.
In conclusion, we hold that there was sufficient proof that Simmons was a willing actor in this deadly fray, ready to assist and encourage the others involved in the shooting, and under a complicity theory, is accountable for the death of the child.
The judgment of the Court of Criminal Appeals is reversed and the cause is remanded to that court for an order or proceeding consistent with this opinion.
REVERSED AND REMANDED.
MADDOX, HOUSTON, STEAGALL, INGRAM and COOK, JJ., concur.
ALMON, SHORES and KENNEDY, JJ., dissent.
ALMON, Justice (dissenting).
I respectfully dissent from the majority opinion. I would affirm the judgment of the Court of Criminal Appeals, because I agree that it was error for the circuit court to charge the jury on aiding and abetting, although I would limit the holding to the facts of this case. Simmons was tried only under § 13A-6-2(a)(2), Ala.Code 1975, which reads:
"(a) A person commits the crime of murder if:
". . . .
"(2) Under circumstances manifesting extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to a person other than himself, and thereby causes the death of another person; ...."
Our complicity statute, § 13A-2-23 states:
"A person is legally accountable for the behavior of another constituting a criminal offense if, with the intent to promote or assist the commission of the offense:

"(1) He procures, induces or causes such other person to commit the offense; or
"(2) He aids or abets such other person in committing the offense; ...."
(Emphasis added).
The Court of Criminal Appeals held, essentially, that it is "incompatible within the same charged offense" to say that one intends to promote or assist the commission of reckless conduct. See the definitions of "Intentionally" and "Recklessly" at Ala.Code 1975, § 13A-2-2(1) and (3). I agree with the majority that there may be some circumstances under which one person can intentionally promote or assist in the commission of a murder under § 13A-6-2(a)(2), such as where two persons jointly shoot into a crowd, or one drives a vehicle while encouraging the other as a passenger to shoot into groups of people on the street, or similar fact situations.[2] However, under the facts of this *1287 case, I agree with the Court of Criminal Appeals that it was error to submit a charge of aiding and abetting or complicity in the commission of the murder of Leonard Rivers.
The problem arises here because § 13A-6-2(a)(2) does not apply to the evidence in this case at all. It has been held that this provision applies to conduct showing extreme indifference "directed toward human life in general," not to conduct evidencing an intent to injure or kill a particular individual. Ex parte McCormack, 431 So.2d 1340 (Ala.1983); Leverett v. State, 611 So.2d 481 (Ala.Crim. App.1992); Thomas v. State, 517 So.2d 640 (Ala.Crim.App.1987); Free v. State, 455 So.2d 137 (Ala.Crim.App.1984), appeal after remand, 495 So.2d 1147 (Ala.Crim.App.1986); Northington v. State, 413 So.2d 1169 (Ala. Crim.App.1981), cert. quashed, 413 So.2d 1172 (Ala.1982). All of the evidence here supports only the conclusion that Simmons or someone else in the truck was shooting at and attempting to kill Peterson or another person with Peterson, Antonio Pearson. If Simmons was aiding and abetting others in the truck in any offense, it was in the attempt to kill Peterson or Pearson. Thus, when the State for some reason decided to prosecute Simmons for "recklessly" killing Rivers, it forced itself into the untenable position of asking the trial court to instruct the jury that Simmons "intended to promote or assist" in the reckless murder of Rivers.
As I view this case, it appears that the State should have tried Simmons under either § 13A-6-2(a)(1) or § 13A-6-2(a)(3):
"(a) A person commits the crime of murder if:
"(1) With intent to cause the death of another person, he causes the death of that person or of another person; or
". . . .
"(3) He commits or attempts to commit arson in the first degree, burglary in the first or second degree, escape in the first degree, kidnapping in the first degree, rape in the first degree, robbery in any degree, sodomy in the first degree or any other felony clearly dangerous to human life and, in the course of and in furtherance of the crime that he is committing or attempting to commit, or in immediate flight therefrom, he, or another participant if there be any, causes the death of any person."

(Emphasis added.) The district attorney stated that he could not prove that "Simmons fired the shot that killed Leonard Rivers." However, if he could have proved, even by circumstantial evidence, that the fatal shot was fired by Simmons or by one of the persons with him in the truck, Simmons could be found guilty under § 13A-6-2(a)(1) pursuant to the complicity statute, because he apparently intended to aid and abet his companions in causing the murder of Peterson. Section 13A-6-2(a)(1) allows the intent to kill Peterson to be "transferred" to Rivers, so I see no reason why the aiding and abetting of the attempt to kill Peterson cannot support a conviction for the intentional murder of Rivers.
Alternatively, if the district attorney could have proved that Simmons or one of his companions fired the shot that killed Rivers, Simmons could be found guilty under § 13A-6-2(a)(3) without even invoking the complicity statute. It seems clear that Simmons and his companions were attempting to murder Peterson; the murder of Peterson would be a felony that is "clearly dangerous to human life," as required under § 13A-6-2(a)(3). Thus, the attempt to murder Peterson would support a conviction of Simmons for the murder of Rivers if Simmons or one of the other participants in the attempt to murder Peterson caused the death of Rivers.
If the State was unable to prove even circumstantially that the shot that killed Rivers came from the truck in which Simmons was riding, I cannot see how Simmons can be found guilty of murder. If the evidence equally supports the inference that Peterson shot Rivers, Simmons cannot be found guilty *1288 under the complicity statute and § 13A-6-2(a)(1), because there is no evidence that, with the "intent to promote or assist the commission of" the murder of Rivers, Simmons induced or caused Peterson to kill Rivers (§ 13A-2-23(1)) or aided and abetted Peterson in killing Rivers (§ 13A-2-23(2)). Nor, under such a state of the evidence, could Simmons be found guilty of murder under § 13A-6-2(a)(3), because Peterson was not a "participant" in the felony that Simmons and his companions were attempting; Peterson was the intended victim of the underlying felony, not a participant. It does seem that a jury could find Simmons guilty of the attempted murder of Peterson, a class A felony. See Ala.Code 1975, § 13A-4-2.
I would hold that the evidence in this case does not support an instruction stating that Simmons could be found guilty of murder for aiding and abetting the reckless murder of Rivers; therefore, I would affirm the judgment of the Court of Criminal Appeals.
SHORES, J., concurs.
NOTES
[1] The difference between murder and manslaughter is one of degree (of recklessness) and not of kind. Ex parte Weems, 463 So.2d 170 (Ala.1984).
[2] However, I reserve judgment on the applicability of Morris v. State, 146 Ala. 66, 41 So. 274 (1906); Ferguson v. State, 141 Ala. 20, 37 So. 448 (1904); and Martin v. State, 89 Ala. 115, 8 So. 23 (1890), to the question of aiding and abetting in the commission of manslaughter under current law. These cases were decided long before our current Criminal Code, Ala.Code 1975, § 13A-1-1 et seq., was enacted. I would consider carefully whether these cases would properly apply under the Code definition of "complicity" at § 13A-2-23 and the Code definition of "manslaughter" at § 13A-6-3(a)(1), before reaffirming them in the context of the Criminal Code.