[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 996 
The appellant, Charles M. Butler, Jr., was convicted of murder made capital because *Page 997 
it was committed during a kidnapping in the first degree, a violation of § 13A-5-40(a)(1), Ala. Code 1975. He was sentenced to life imprisonment without parole.
 I.
Butler contends that the State failed to establish a prima facie case of capital murder during the course of a kidnapping in the first degree, because, he argues the evidence did not establish that he acted in complicity with Steve Mullins and that he specifically intended to kill Billy Jack Gaither.
To sustain a conviction under § 13A-5-40(a)(1), Ala. Code 1975, for the capital offense of murder during a kidnapping, the State must prove beyond a reasonable doubt: (1) a kidnapping in the first degree, as defined by § 13A-6-43(a), or an attempt thereof; (2) an intentional murder, as defined by §13A-6-2(a)(1); and (3) that the murder was committed "during" the course of the "kidnapping or attempted kidnapping." Section13A-5-40(c) states:
 "A defendant who does not personally commit the act of killing which constitutes the murder is not guilty of a capital offense defined in subsection (a) of this section unless that defendant is legally accountable for the murder because of complicity in the murder itself under the provisions of Section 13A-2-23, in addition to being guilty of the other elements of the capital offense as defined in subsection (a) of this section."
Section 13A-2-23, Ala. Code 1975, provides:
 "A person is legally accountable for the behavior of another constituting a criminal offense if, with the intent to promote or assist in the commission of the offense:
 "(1) He procures, induces, or causes such other person to commit the offense; or
 "(2) He aids or abets such other person in committing the offense; or
 "(3) Having a legal duty to prevent the commission of the offense, he fails to make an effort he is legally required to make."
"`The participation in a crime and the community of purpose of the perpetrators need not be proved by direct or positive testimony, but may be inferred from circumstantial evidence.'" Limbaugh v.State, 581 So.2d 5, 10 (Ala.Cr.App. 1991), quoting Tice v. State,460 So.2d 273, 279 (Ala.Cr.App. 1984). "Aid and abet comprehend all assistance rendered by acts or words of encouragement or support or presence, actual or constructive, to render assistance should it become necessary." Turner v. State, 674 So.2d 1371,1376 (Ala.Cr.App. 1995) (citations omitted).
Section 13A-2-2(1), Ala. Code 1975, provides, "A person acts intentionally with respect to a result or to conduct described by a statute defining an offense, when his purpose is to cause that result or to engage in that conduct." Intent may be inferred from the use of a deadly weapon. See Long v. State, 668 So.2d 56, 60
(Ala.Cr.App. 1995); Buskey v. State, 650 So.2d 605, 609
(Ala.Cr.App. 1994). Additionally, "[t]he question of a defendant's intent at the time of the commission of the crime is usually an issue for the jury to resolve." Rowell v. State, 570 So.2d at 850, citing Crowe v. State, 435 So.2d 1371, 1379
(Ala.Cr.App. 1983). Intent may be "`inferred from the character of the assault, the use of a deadly weapon and other attendant circumstances.'" Jones v. State, 591 So.2d 569, 574 (Ala.Cr.App. 1991), quoting Johnson v. State, 390 So.2d 1160, 1167
(Ala.Cr.App.), cert. denied, 390 So.2d 1168 (Ala. 1980). *Page 998 
In Mangione v. State, 740 So.2d 444 (Ala.Cr.App. 1998), this Court stated:
 "`When reviewing a challenge to the sufficiency of the evidence, this court must accept as "`as true the evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider the evidence in the light most favorable to the prosecution.'"' Brown v. State, 705 So.2d 871, 875-76 (Ala.Cr.App. 1997) (citations omitted).
 "`"`[A]n appellate court . . . is not permitted to pass upon the weight or the sufficiency of the evidence, where it may yield any rational inference of guilt.' Toles v. State, 170 Ala. 99, 100, 54 So. 511 (1911). A verdict on conflicting evidence is conclusive on appeal. Roberson v. State, 162 Ala. 30, 50 So. 345 (1909). `[W]here there is ample evidence offered by the state to support a verdict, it should not be overturned even though the evidence offered by the defendant is in sharp conflict therewith and presents a substantial defense.' Fuller v. State, 269 Ala. 312, 333, 113 So.2d 153 (1959), cert. denied, Fuller v. Alabama, 361 U.S. 936, 80 S.Ct. 380, 4 L.Ed.2d 358 (1960)."'
 "White v. State, 546 So.2d 1014, 1017 (Ala.Cr.App. 1989), quoting Granger v. State, 473 So.2d 1137, 1139 (Ala.Cr.App. 1985)."
740 So.2d at 450-51.
The State's evidence tended to establish the following. Testimony indicated that during the afternoon on February 19, 1999, Butler and his father, Charles Butler, Sr., were participating in a pool tournament at a local bar. Around 8:30 p.m., Steve Mullins, a friend of Butler's, entered the bar and asked Butler to go to another local bar with him and Gaither. Butler indicated that he wanted to finish the tournament and that he would go out with them later. Mullins left and returned around 9:30 p.m. Mullins entered the bar and conversed with Butler. Butler asked his father for $20 and told him that he and Mullins were going to another local bar. As Mullins and Butler left the bar, Butler took a six-pack of beer from his father's truck and drank one swig of moonshine from a bottle that was lying on the passenger's seat of his father's truck. Butler and Mullins then got into Gaither's car, and Gaither drove them to another local bar. When they arrived at the bar, they noticed several police cars in the parking lot. Because there were warrants outstanding for Mullins's arrest, they left the parking lot and drove to — Butler's house. Gaither, Mullins, and Butler went inside and Butler changed clothing. Butler indicated to Gaither that they should go to "the watersheds."[1] Gaither drove Butler and Mullins to the watersheds, and they sat outside and talked. Testimony indicated that Gaither mentioned homosexual activity, and that the mention of homosexuality angered Butler. Butler kicked Gaither in the chest and the back. When Butler stopped kicking Gaither, he walked around Gaither's car and urinated. Mullins then walked over to Gaither and began punching him; he then cut his throat. Gaither was still alive at this point. Mullins and Butler put Gaither in the trunk of Gaither's car.[2] *Page 999 
Butler sat in the passenger's seat and Mullins drove them to his mobile home.[3] While at the home, Mullins and Butler got some tires and a can of kerosene and put the items in the trunk over Gaither. Additionally, Mullins grabbed an ax handle and put it in the car. Mullins drove them to an area near Peckerwood Creek. When Mullins opened the trunk of the car, Gaither stood up; he got out of the car and pushed Mullins down the creek embankment. Butler became scared and ran down the street and into the woods. Butler hid in the woods until Mullins called his name. Butler then returned to the scene and watched Mullins beat Gaither over the head with a club.[4] As Mullins was beating Gaither, Mullins told Butler to start cleaning the blood from Gaither's car; Butler did so. After Gaither appeared to be dead, Mullins dragged Gaither's body to a nearby bridge abutment. Mullins and Butler put tires and kerosene over Gaither's body, and set the tires on fire. They waited approximately five minutes for the fire to burn, and then Mullins drove Butler to the mobile home. At the mobile home, Mullins borrowed his roommate's car. Mullins drove his roommate's car and Butler drove Gaither's car to a local gasoline service station, and Mullins purchased a gallon of gasoline. They drove the cars to the city dump, poured gasoline over Gaither's car, and set it on fire. Mullins then drove Butler to a local bar where they had a drink, after which Mullins drove Butler to the Butlers' house.
Butler's father testified that Butler came home around 3:00 a.m. and told him that he had something important he had to tell him. According to Butler's father, Butler cried and said, "[D]addy . . . we killed somebody." (R. 519.) Additionally, Butler's father testified that Butler told him that he "kicked a queer's ass." (R. 520.) Butler's father further testified that Butler told him that he would turn himself over to the police if he would go with him. Butler's father stated that, at that time, he could not turn his son in, and that, approximately a week later, he told his friend, Joey Wayne Breedlove, about the incident. Breedlove testified that he spoke to Butler and Butler's father about the incident, and that he reported what he had learned to the police.
Kelley Johnson, an investigator for the Coosa County sheriff's office, testified that Mullins provided a statement concerning the incident. Johnson stated that Mullins told him that he and Butler had discussed killing Gaither approximately two weeks before the murder occurred. According to Johnson, Mullins told him that, after initially beating Gaither, he and Butler went to his mobile home and put a can of kerosene, an ax handle, and tires into the car. Johnson testified that Mullins told him that, at Peckerwood Creek, Butler ran away while he was beating Gaither, and that when Butler returned, he directed Butler to clean the blood out of Gaither's car. Additionally, Johnson stated that Mullins told him that he killed Gaither because he did not trust homosexual people.
Sharon Pullen, an attendant at a local gas station, testified that, during the late evening on February 19 or the early morning on February 20, Butler and a large *Page 1000 
bald man purchased approximately $.80 worth of gasoline.
Terry Spidle, the custodian of records at a regional telephone company, testified that eight telephone calls were placed from Mullins's residence to the Butler residence from January 15 through February 19. Additionally, Spidle stated that, from January 16 through February 19, six telephone calls were placed from Mullins's residence to Gaither's residence.
Judy Woodard testified that, around 2:00 p.m. on February 20, she, her husband, and her son were taking a shortcut in their truck through the Peckerwood Creek area, and they found Gaither's body. Woodard stated that she telephoned the police to report finding the body.
Al Bradley, a Coosa County police officer, testified that he examined the crime scene. Bradley stated that, because there were teeth and hair on the ground, it appeared that a scuffle had occurred. According to Bradley, tires were lying over Gaither's burned body. Gaither's skull was split open, his nose was caved in, and he appeared to have been hit over the head repeatedly. Johnson testified that he found a baseball cap approximately 30 feet away from the body. John M. Case, a forensic scientist, testified that he analyzed hair fibers found in the baseball cap, and that, in his opinion, the hair fibers from the baseball cap belonged to Butler.
Dr. Stephen Pustilnik, a state medical examiner, testified that he performed an autopsy on Gaither's body. Pustilnik stated that Gaither had been hit over the head with a blunt object, such as an ax handle, at least 10 times. According to Pustilnik, Gaither died as the result of multiple blunt-force trauma to the head, and he died before being burned.
Mullins testified as a defense witness. Mullins stated that he was a former "skinhead" and that he had had a Nazi symbol tattooed on his hand. Mullins further stated that, on the afternoon of February 19, he and Gaither had ridden around town and drank beer. Mullins testified that Gaither drove to a bar, and that he went inside and asked Butler to go out with them. Mullins further testified that, although Butler had not met Gaither before that evening, he had previously told Butler that Gaither had propositioned him and that he was "planning on doing something about it." (R. 582.) According to Mullins, Butler was playing in a pool tournament and was hesitant to leave the tournament. However, after he told Butler that he was planning on "getting rid" of Gaither that evening, Butler agreed to go with them. Mullins stated that he, Gaither, and Butler left the bar after the pool tournament had ended. Mullins stated that they went to Butler's house and that he and Butler, outside of Gaither's presence, discussed how Mullins was going to kill Gaither; Butler suggested that they go to the watersheds. According to Mullins, while Butler was not present, he led Gaither to believe that he, Butler, and Gaither were going to engage in homosexual activity. Mullins testified that he, Butler, and Gaither got into Gaither's car, and that Gaither drove them to the watersheds.
Several witnesses testified that, a few months before the incident occurred, Mullins had attended a party at which the guests were mostly homosexual people, and that Mullins had engaged in homosexual activity with another man. Stephen Edwards, a homosexual man, testified that he knew Butler and Mullins, and that Butler did not appear to have any hostility toward homosexual people.
Butler testified that he did not discuss any plans with Mullins to kill Gaither. Butler admitted that, with the exception of running into the woods, he was present *Page 1001 
during the incident. Butler stated that, because he was scared of Mullins, he followed his orders to assist him.
Viewing the evidence in the light most favorable to the State, as we are required to do, see Bayhi v. State, 629 So.2d 782,788 (Ala.Cr.App. 1993), we find that the State established a prima facie case of the capital offense of murder committed during a kidnapping. Given that testimony indicated that Butler was present and that he participated in the killing, that Butler instigated the violence culminating in Gaither's death, and that Butler was available to support and to render aid to Mullins if needed, we conclude that the evidence that Butler intentionally aided and abetted Mullins in Gaither's kidnapping and murder was overwhelming. Based on the foregoing, we conclude that the State established a prima facie case of capital murder.
Butler additionally contends that the only evidence indicating that Butler planned to kill Gaither was Mullins's statement to the police to that effect. Specifically, he argues that Mullins's statement was not sufficiently corroborated.
"Corroboration need only be slight to suffice." Ingle v.State, 400 So.2d 938, 940 (Ala.Cr.App. 1981). Circumstantial evidence is sufficient to show corroboration. Jackson v. State,451 So.2d 435, 437 (Ala.Cr.App. 1984). "The testimony of an accomplice must be corroborated `by other evidence tending to connect the defendant with the commission of the offense,' but it is not necessary that there should be other evidence which would, of itself, warrant a conviction." Kuenzel v. State, 577 So.2d 474,515 (Ala.Cr.App. 1990), quoting Lumpkin v. State, 68 Ala. 56,57-58 (1880).
Our review of the record indicates that Mullins's statement was sufficiently corroborated by telephone company records, by the testimony of Breedlove and Butler's father, and by the testimony of the various police officers who investigated the crime. Thus, the trial court did not err in determining that Mullins's statement was sufficiently corroborated.
 II.
Butler contends that the trial court erred in denying his motion to dismiss the case on the ground that the prosecutor engaged in misconduct. Specifically, he claims that the prosecutor should not have been permitted to commit the following alleged misconduct: (1) to call a special session for the grand jury; (2) to commit a Brady violation; (3) to submit into evidence crime scene and autopsy photographs of Gaither's body; and (4) to comment on Butler's failure to assist Gaither.
 A.
Butler alleges that the prosecutor committed error by requesting a special session of the grand jury be convened for the purpose of indicting him. He argues that, because the preliminary discovery hearing was held one week after the grand jury proceedings, he was unable to have access to the evidence before he was indicted.
Our review of the record indicates that this issue is not preserved. The defense did not raise this issue in any pretrial motions. "Objections based on defects in the commencement of proceedings or in the charge, other than the lack of subject matter jurisdiction or failing to charge an offense, may be raised only by pre-trial motion as provided in Rule 15.3." Rule 15.2, Ala.R.Crim.P. Because Butler did not raise this issue in a pretrial motion, this issue is not preserved. *Page 1002 
 B.
Butler maintains that the State did not properly disclose information that, he says, was required to be disclosed underBrady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215
(1963). Specifically, he claims that the State should have informed him that Mullins confessed in return for a lighter sentence.
This Court stated in Kinder v. State, 515 So.2d 55, 63-64
(Ala.Cr.App. 1986):
 "`In order to establish a Brady violation, appellant must prove: "(1) The prosecution's suppression of evidence; (2) The favorable character of the suppressed evidence for the defense; and (3) The materiality of the suppressed evidence."' Knight v. State, 478 So.2d 332, 335 (Ala.Cr.App. 1985). Impeachment evidence, as well as exculpatory evidence, falls within the Brady rule. See Giglio v. United States, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104
(1972)."
Our review of the record indicates that, on May 19, 1999, defense counsel filed motions styled as a "Motion to Reveal the Identity of Informants and Reveal Any Deals, Promises, or Inducements," and as a "Motion for Discovery of Prosecution Files, Records, and Information Necessary to a Fair Trial." (C. 19-37.) The record indicates that, on June 2, defense counsel went to the prosecutor's office and he and the prosecutor discussed the case. At trial, during a conference outside the presence of the jury, the prosecutor stated that his office has an "open-file" policy and that during that visit he permitted defense counsel to review any documents pertinent to the case. Additionally, the prosecutor stated that he gave the defense a statement Mullins made to the police. On June 24, Mullins was offered a sentence of life imprisonment without parole in exchange for entering a plea of guilty to capital murder. The prosecutor indicated that Mullins was never offered any deals in exchange for giving a statement to the police.
Given that there is no evidence that Mullins was offered a deal in exchange for confessing, Butler did not establish that the State failed to disclose evidence to him. Thus, the trial court did not err in determining that a Brady violation did not occur, and did not err in permitting the State to introduce evidence concerning Mullins's statement.
 C.
Butler alleges that the trial court erred in permitting the prosecutor to introduce into evidence crime-scene and autopsy photographs. Specifically, he argues that the photographs were overly prejudicial and excessively cumulative.
"Generally, photographs are admissible into evidence in a criminal prosecution if they tend to prove or disprove some disputed or material issue, to illustrate or elucidate some other relevant fact or evidence, or to corroborate or disprove some other evidence offered or to be offered, and their admission is within the sound discretion of the trial judge." Dobyne v. State,672 So.2d 1319, 1333-34 (Ala.Cr.App. 1994), aff'd, 672 So.2d 1354
(Ala. 1995), cert. denied, 517 U.S. 1169, 116 S.Ct. 1571,134 L.Ed.2d 670 (1996) (citations omitted); C.Gamble, McElroy'sAlabama Evidence, § 207.01(2) (5th ed. 1996). Photographs of a victim's body are admissible as direct evidence in order to prove that the victim is dead. Jenkins v. State, 627 So.2d 1034, 1045
(Ala.Cr.App. 1992), aff'd, 627 So.2d 1054 (Ala. 1993), cert. denied, 511 U.S. 1012, 114 S.Ct. 1388, 128 L.Ed.2d 63 (1994). "'[P]hotographs depicting the character and location of wounds on a deceased's body are admissible *Page 1003 
even though they are cumulative and are based on undisputed matters. The fact that a photograph is gruesome is not grounds to exclude it as long as the photograph sheds light on issues being tried.'"McNair v. State, 653 So.2d 320, 327 (Ala.Cr.App. 1992), aff'd, 653 So.2d 353 (Ala. 1994), cert. denied,513 U.S. 1159, 115 S.Ct. 1121, 130 L.Ed.2d 1084 (1995), quoting Ex parte Bankhead, 585 So.2d 112, 118-19 (Ala. 1991), rev'd on other grounds, 625 So.2d 1146 (Ala. 1993) (citations omitted). Moreover, "photographic evidence, if relevant, is admissible even if it has a tendency to inflame the minds of the jurors." Ex parte Siebert, 555 So.2d 780, 783-84 (Ala. 1989), cert. denied, 497 U.S. 1032, 110 S.Ct. 3297, 111 L.Ed.2d 806
(1990), citing Hutto v. State, 465 So.2d 1211, 1212
(Ala.Cr.App. 1984).
Here, the photographs were relevant because they illustrated the testimony of Dr. Pustilnik, who explained Gaither's extensive injuries and the cause of his death. Additionally, the crime-scene photographs aided the testimony of the police officers who investigated the scene and the witness who discovered Gaither's body. The fact that the photographs might have inflamed the jury was not a sufficient ground for their exclusion. Accordingly, the trial court committed no error in admitting the photographs into evidence.
 D.
Butler alleges that, during the cross-examination of Butler and during the State's closing argument, the prosecutor improperly commented on Butler's failure to come to Gaither's aid and to prevent the murder.
Our review of the record indicates that Butler has raised this issue for the first time on appeal. "An issue which has been raised for the first time on appeal is not subject to appellate review, because it has not been properly preserved and presented."Pate v. State, 601 So.2d 210, 213 (Ala.Cr.App. 1992). See alsoLandreth v. State, 600 So.2d 440, 445 (Ala.Cr.App. 1992).
However, even if the issue had been preserved, our review of the cross-examination of Butler and the prosecutor's closing arguments reveals that the prosecutor's comments did not constitute misconduct.
"In reviewing allegedly improper prosecutorial argument, we must first determine if the argument was, in fact, improper. If we determine that the argument was improper, the test for review is not whether the comments influenced the jury, but whether they might have influenced the jury in arriving at its verdict." Smithv. State, 698 So.2d 189, 202-03 (Ala.Cr.App. 1996), aff'd,698 So.2d 219 (Ala.), cert. denied 522 U.S. 957, 118 S.Ct. 385,139 L.Ed.2d 300 (1997) (citations omitted); Bush v. State, 695 So.2d 70,131 (Al.Cr.App. 1995), aff'd, 695 So.2d 138 (Ala. 1997), cert. denied, 522 U.S. 969, 118 S.Ct. 418, 139 L.Ed.2d 320 (1997) (citations omitted). "The relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v.Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471,91 L.Ed.2d 144, 157 (1986), quoting Donnelly v. DeChristoforo, 416 U.S. 637,94 S.Ct. 1868, 40 L.Ed.2d 431 (1974).
In Darden v. Wainwright, the United States Supreme Court stated:
 "[I]t `is not enough that the prosecutors' remarks were undesirable or even universally condemned.' Darden v. Wainwright, 699 F.2d [1031] 1031 at 1036 [(1983)]. The relevant question is whether the prosecutors' comments `so *Page 1004 
infected the trial with unfairness as to make the resulting conviction a denial of due process.' Donnelly v. DeChristoforo, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431
(1974)."
477 U.S. at 181, 106 S.Ct. at 2471, 91 L.Ed.2d at 157.
Butler's brief to this Court does not indicate the specific comments he claims were improper. Thus, we are unable to identify the specific comments to discuss. Therefore, we will view the examination and arguments in their entirety.
During direct examination, Butler testified that he had assisted Mullins only because he was afraid of him. The prosecutor questioned Butler as to why he did not ask for help from anyone during the commission of the crime and why he did not run away from Mullins at Peckerwood Creek. Additionally, it appears that, during closing arguments, the prosecutor emphasized evidence indicating that Butler intended to kill Gaither. The prosecutor argued that several incidents revealed that Butler had intended to assist Mullins in the murder, including evidence that Butler ran into the woods, and instead of running to get help, he ran back to where Mullins was beating Gaither. (R. 849.) The record does not reveal that the prosecutor implied during closing arguments that a person present at the commission of an offense has a duty to assist a victim. During the trial and its closing argument, the defense presented evidence that Butler was afraid of Mullins and that he was under duress when he committed the acts.
Because a theory of the defense was that Butler was under duress and that he did not intend to kill Gaither, the prosecutor's comment concerning Butler's not looking for help when he was in the woods and away from Mullins was an appropriate response to the defense's theory of the case. Additionally, any comments concerning why Butler did not ask for help and why he did not leave were relevant to the question of particularized intent. Thus, the prosecutor's comment, which was really a response to the defense's arguments, was not misconduct. Furthermore, the trial court instructed the jury that statements by the prosecutor and defense counsel are not evidence. Thus, the trial court did not err in permitting the prosecutor to comment on the evidence presented and on the omissions in the defense's case.
 III.
Butler maintains that the trial court erred in failing to instruct the jury on manslaughter as a lesser included offense to the offense of capital murder. Specifically, he argues that the trial court should have instructed the jury on heat-of-passion and reckless manslaughter.
A defendant accused of an offense is entitled to have the trial court charge on any lesser included offense if there is any reasonable theory from the evidence to support the lesser charge, regardless of whether the State or the defendant offers the evidence. Parker v. State, 581 So.2d 1211, 1214 (Ala.Cr.App. 1990); Ex parte Pruitt, 457 So.2d 456 (Ala. 1984). "The court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense." § 13A-1-9(b), Ala. Code 1975.
In Anderson v. State, 507 So.2d 580 (Ala.Cr.App. 1987), this Court stated:
 "A court may properly refuse to charge on a lesser included offense only when (1) it is clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense, or (2) the requested charge would have a tendency to mislead or *Page 1005 
confuse the jury. Lami v. State, 43 Ala. App. 108, 180 So.2d 279, cert. denied, 278 Ala. 710, 180 So.2d 282 (1965)."
507 So.2d at 582-83.
A person commits the crime of manslaughter if he causes the death of another person recklessly or as a result of a sudden heat of passion resulting from legal provocation. § 13A-6-3, Ala. Code 1975.
 A.
Butler argues that the trial court should have instructed the jury on heat-of-passion manslaughter and that it erred in refusing his requested charge on that lesser included offense. Specifically, he argues that Mullins was "blinded by rage of such magnitude that he was unable to stop once he started, and that this rage resulted from Gaither's remembering and commenting that Mullins had propositioned him on a previous occasion and from Gaither's pushing him into the creek." (Butler's brief to this Court at p. 30-31.) Thus, according to Butler, because he was charged as an accomplice, he also was entitled to Mullins's defense of heat of passion manslaughter.
In this case, Butler offered no evidence to support a theory on which he could have been found guilty of heat-of-passion manslaughter. As previously discussed in Part I of this opinion, the evidence clearly established that Butler aided Mullins in the kidnapping and intentional murder of Gaither. Furthermore, the defense argued that Butler was acting under duress at the time of the murder. "When the evidence clearly shows [Butler] either is guilty of the offense charged or is innocent, the charge on a lesser included offense is not necessary or proper." Breckenridgev. State, 628 So.2d 1012, 1017 (Ala.Cr.App. 1993). Because the record does not indicate any evidence that would have supported an instruction on heat-of-passion manslaughter, the trial court did not err in refusing the requested charge.
 B.
Butler argues that the trial court should have instructed the jury on reckless manslaughter because, he says, Gaither, Mullins, and he were intoxicated at the time of the murder.[5]
Our review of the record indicates that Butler has raised this issue for the first time on appeal. "An issue which is raised for the first time on appeal is not subject to appellate review, because it has not been properly preserved and presented."Pate v. State, 601 So.2d 210, 213 (Ala.Cr.App. 1992). See alsoGlasco v. State, 513 So.2d 54 (Ala.Cr.App. 1987) (failure to object to instructions concerning reckless manslaughter precluded consideration of the issue). Thus, this issue was not preserved.
However, even if this issue had been preserved, the record does not contain any evidence that Butler was intoxicated during the commission of the crime. Although testimony indicated that Butler drank one "swig" of moonshine and that he grabbed a six-pack of beer from his father's truck before leaving the pool tournament with Gaither and Mullins, the evidence did not establish that Butler was intoxicated. Given that the evidence did not indicate that Butler recklessly caused Gaither's death, the trial court did not err in not instructing on reckless manslaughter. *Page 1006 
 IV.
Butler contends that the trial court erred when it instructed the jury regarding sentencing.
After a recess in the jury's deliberations, the following transpired:
 "THE FOREMAN: Judge, the jury wanted to know if we have any responsibility after we render a verdict. There was some indication in some of the comments during the course that we would be involved in the sentencing stage also or not involved.
 "THE COURT: Okay. I'll consider the question and call you back out in just a moment with the rest of the jury. Thank you.
 "(The following discussion was held outside the presence and hearing of the jury.)
 "THE COURT: Well, does the — the State desire to go forward in the event of a capital conviction and seek the death penalty in this case with the jury's consideration?
"MR. THOMPSON [prosecutor]: No, Your Honor, we would not.
 "MR. HILL [defense counsel]: Certainly, we're not going to — obviously, we're not going to disagree with that, Your Honor.
 "THE COURT: All right. Then would it be appropriate to tell the jury that sentencing in this case would not be for their consideration, but would be solely with the Court in this case? Would that be acceptable to the state?
"MR. THOMPSON: I think so, Your Honor.
"THE COURT: And with the defendant?
"MR. HILL: Yes, sir.
"THE COURT: Ask the jury to step out, please.
 "(Following recess for deliberations, court reconvened with all parties present in open court all inside the presence and hearing of the jury.)
 "THE COURT: You may have a seat. Court's in session. Members of the jury, sentencing in this matter is not for your consideration nor will it be for your consideration at any time, but it would strictly be with this Court after the Court orders a pre-sentence report, and I will do the sentencing. So sentencing is not a matter for your consideration."
(R. 906-08.) (Emphasis added.)
A party cannot assume inconsistent positions at trial and on appeal, and a party cannot allege as error in the trial court a matter that was invited by him or was a natural consequence of his own actions. Leverett v. State, 462 So.2d 972 (Ala.Cr.App. 1984). In other words, a defendant cannot invite error by his conduct and then later profit from the error. Timmons v. State, 487 So.2d 975
(Ala.Cr.App.), cert. denied, 487 So.2d 975 (Ala. 1986).
In this case, the defense indicated to the court that its instruction was acceptable and agreed with the State that the death penalty was not appropriate. Furthermore, the defense did not object to the trial court's instruction. Thus, any error in the giving of the instruction was invited by the defense.
Moreover, an instruction, during the guilt phase of trial, that the jury should not be concerned with punishment is not error. See Roberts v. State, 735 So.2d 1244, 1257 (Ala.Cr.App. 1997); Bush v. State, 695 So.2d 70, 116-17 (Ala.Cr.App. 1995). Thus, the trial court did not err in giving an instruction concerning the trial court's and the jury's roles during the guilt phase of trial. *Page 1007 
Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
Long, P.J., and McMillan and Cobb, JJ., concur; Baschab, J., concurs in the result.
[1] Testimony indicated that "the watersheds" is an area in the woods near the river where teenagers often go.
[2] Testimony revealed that Gaither's car was a hatchback model.
The record contained conflicting testimony concerning how Gaither got into the trunk of his car. The testimony of Joey Wayne Breedlove, a friend of the Butler family, indicated that Butler told him that both he and Mullins put Gaither in the trunk. Kelley Johnson, an investigator for the Coosa County sheriff's office, testified that Butler told him that Mullins ordered Gaither to get into the trunk, and that Gaither did so.
[3] Testimony indicated that Butler's brother, Randall Jones, resided in a mobile home with Mullins. The appellant resided in a house with his parents.
[4] There was testimony that Mullins beat Gaither with either a club or an ax handle.
[5] We note that a defendant can be an accomplice to reckless manslaughter. See Ex parte Simmons, 649 So.2d 1282 (Ala. 1994).